**UNITED STATES of America, et al., Plaintiffs–Appellees,**

v.

**Thelma McCOY, Defendant–Appellant.**

**No. 91–1357**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1992.

Rehearing and Rehearing En Banc
Denied March 26, 1992.

---

Thelma McCoy, pro se.

Gary R. Allen, Chief, Robert W. Metzler, Charles E. Brookhart, Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., Marvin Collins, U.S. Atty., Paula Mastropieri Billingsley, Asst. U.S. Atty., Dallas, Tex., for plaintiffs-appellees.

Before POLITZ, Chief Judge, KING, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM.

Thelma McCoy appeals from an order of the district court denying her motion to defer or stay a default judgment entered in favor of the United States in a proceeding to enforce a tax summons. McCoy argues that the default judgment is defective because she was not served with a notice of application for judgment, as required by Rule 55(b)(2) of the Federal Rules of Civil Procedure. Because we find that the district court acted within its discretion to modify the Federal Rules in a summons enforcement proceeding, we affirm.

## I. BACKGROUND

On July 26, 1990, Internal Revenue Officer J.L. Warren issued an administrative summons to Thelma McCoy requiring her to give testimony and produce all documents and records that she possessed or controlled that reflected income she received for the years 1988 and 1989. Warren served an attested copy of the summons on McCoy by handing it to her. The summons directed McCoy to appear at the federal office building in Lubbock, Texas on August 16, 1990.

McCoy did not comply with the summons. On January 24, 1991, the United States filed a petition to enforce the sum-

mons in the District Court for the Northern District of Texas.[1] The petition was accompanied by a declaration from Officer Warren stating that he was conducting an investigation into McCoy's tax liability for 1988, that he had issued a summons in furtherance of the investigation and had served an attested copy of the summons on McCoy, that McCoy had not complied with the summons, that the documents sought were not in the possession of the IRS, and that the IRS had taken all administrative steps necessary for issuance of a summons. On the same day the petition was filed, the district court issued an order requiring McCoy to appear on March 8, 1991, and show cause why she should not comply with the summons.

McCoy did not appear in court on March 8. That day, she filed with the district judge a document captioned "Special Appearance" asserting four defenses to the summons.[2] She claimed (1) that the authority to issue the summons had not been properly delegated; (2) that she had filed papers with the IRS concerning the tax years under investigation; (3) that the court "lack[ed] venue"; and (4) that the United States Government had no jurisdiction over her to issue a summons. McCoy did not explain why she chose to file this document rather than appear in court. The district judge acknowledged receipt of McCoy's Special Appearance before the hearing and stated that he would make it part of the file even though he "[did not] consider this as an appearance by Mrs. McCoy today."

The court proceeded to conduct the hearing in McCoy's absence. Officer Warren testified that he was conducting an investigation into McCoy's tax liability, that the IRS did not have a record of a return filed by McCoy for 1988, and that he personally served both the summons and the show cause order in this case on McCoy. He further testified that the summons at issue

sought documents which would enable the IRS to prepare a tax return for McCoy for 1988, that the records sought were relevant to his investigation, that the IRS had incomplete records for McCoy, and that McCoy had not complied with the summons.

At the close of the hearing the district court granted the IRS's petition and issued a default judgment ordering McCoy to obey the summons and to testify and produce documents as required by the summons on March 15, 1991. On March 14, McCoy filed various papers in the district court, including a Motion to Defer or Stay the Default Judgment order, a Motion to Set Aside Default Judgment, and a memorandum in support. In support of the motions she contended that she was not served with an application or notice of application for default judgment as required by Rule 55(b)(2). She also raised various defenses in the memorandum, and repeated these defenses in a document entitled "Answer." The court issued an order on March 14 denying McCoy's Motion to Defer or Stay the Default Judgment order. McCoy filed a timely notice of appeal.[3]

## II. ANALYSIS

### A. The Order From Which McCoy Appealed

■ Initially, we note that the court's March 14 order, denying McCoy's motions filed that date, states that only the Motion to Defer or Stay the Default Judgment Order is denied. It does not mention the Motion to Set Aside Default Judgment. When a party against whom a default judgment has been entered wants to attack that judgment, the proper procedure is a Rule 55(c) Motion to Set Aside Default Judgment. Thus, although McCoy did file the proper motion, the order appealed from does not specifically mention that motion.

---

1. Jurisdiction to enforce the summons is vested in the district court under 26 U.S.C. §§ 7402(b) and 7604(a).

2. McCoy has represented herself throughout the proceedings in the district court and on appeal.

3. Subsequent to McCoy's appeal, the district court entered an order holding the government's motion for civil contempt in abeyance until McCoy's appeal is decided.

■ We are satisfied, however, that an appeal from a denial of McCoy's Motion to Set Aside Default Judgment is properly before us. McCoy's various motions, memorandum and answer were filed together on the same date (March 14), and there is only one docket entry for the entire filing entitled "MOTION by Thelma McCoy to defer or stay default judgment order." The district court apparently considered the entire filing an effort to attack the default judgment, and so will we. In denying McCoy's Motion to Defer or Stay the Default Judgment Order, the court effectively denied her attack on the default judgment. Thus, it denied her properly presented Motion to Set Aside Default Judgment.

## B. *Entry of Default Judgment*

McCoy argues that the district court should have set aside the default judgment because the Government did not serve a written notice of application for judgment three days prior to a hearing on the application, as required by Rule 55(b)(2).[4] The three-day notice requirement could apply to McCoy only if she made an appearance in the action. We therefore analyze this question first, and, finding that she did appear, proceed to determine whether notice was required.

### 1. McCoy's Appearance in the Action

■ Rule 55(b)(2) provides a party with three days notice prior to the entry of a default judgment if the party makes an appearance in the case. We have not limited the concept of an "appearance" to those instances in which the party has made a physical appearance in court or has filed a document in the record. Rather, we have required only that the party against whom the default judgment is sought indicate in some way an intent to pursue a defense. In *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274 (5th Cir. 1989), for example, we required three days

notice where a third-party defendant served a motion to dismiss and a memorandum in support on the opposing party and in court, but the clerk of the district court refused to file it because it did not comply with local rules. We held that, even though the third-party defendant made no effort to refile in compliance with local rules, the third-party defendant "clearly conveyed to [the third-party plaintiff its] intention to contest the suit." *Id.* at 277. Similarly, in *Turner v. Salvatierra*, 580 F.2d 199 (5th Cir.1978), we held that the filing of an answer to a first complaint obligated the plaintiff to serve notice under Rule 55(b)(2). In *Charlton L. Davis & Co. P.C. v. Fedder Data Center, Inc.*, 556 F.2d 308 (5th Cir.1977), no documents were filed in the record, but we required three days notice because the plaintiff knew from phone conversations and correspondence that the defendant "had a clear purpose to defend the suit." *Id.* at 309. In a recent case in which we found that the defendant did *not* appear for the purposes of Rule 55(b)(2), the defendant's only action in the case was his counsel's request to opposing counsel for an informal extension of time in which to plead. *Federal Savings and Loan Insurance Corporation v. Kroenke*, 858 F.2d 1067, 1068 (5th Cir.1988).

Although McCoy waited until the very last minute to indicate her intention to defend against the summons proceeding, we think our cases, particularly *Sun Bank of Ocala*, point to a relatively low threshold for making an appearance for purposes of Rule 55(b)(2)'s three-day notice requirement. McCoy's letter entitled "Special Appearance," while far from timely, reached the district judge before the hearing (he commented on it before Officer Warren testified) and raised defenses.

### 2. The Requirement of Three-Day Notice Prior to Default Judgment

■ That McCoy appeared in the action does not automatically entitle her to three

---

**4.** Rule 55(b)(2), which applies to cases in which the plaintiff does not request a "sum certain," provides as follows:

In all cases [other than those in which the plaintiff demands a sum certain] the party entitled to a judgment by default shall apply to the court therefor.... If the party against

whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

days notice prior to the entry of a default judgment in a tax summons proceeding. The Government contends that the show cause order of January 24, issued shortly after the Government filed its initial petition, supplied sufficient notice for the purposes of Rule 55(b)(2). Alternatively, the government argues that the district court was empowered under Rule 81(a)(3) to eliminate the three-day notice requirement. Under this approach, even if the show cause order did not constitute adequate notice for the purposes of Rule 55(b)(2), the district court's entry of an order enforcing the summons without notice was a permissible modification of the Federal Rules because McCoy still had a full opportunity to be heard. We find that these arguments together lead to the proper disposition: the district court acted within its discretion under Rule 81(a)(3) to modify the three-day notice requirement by giving notice in the show cause order.

 Rule 81(a)(3) permits district courts, in certain circumstances, to modify the application of the Federal Rules of Civil Procedure. The rule provides, in relevant part, that

> [The Federal Rules] apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings.

Fed.R.Civ.P. 81(a)3.

It has long been the law that the Federal Rules apply to summary proceedings in which the Government seeks to enforce a tax summons. *United States v. Donaldson*, 400 U.S. 517, 528, 91 S.Ct. 534, 541, 27 L.Ed.2d 580 (1971); *United States v. Bichara*, 826 F.2d 1037, 1039 (11th Cir.1987). The Court in *Donaldson*, however, recognized that Rule 81(a)(3) provides a mandate for flexible application of the civil rules to summons proceedings. 400 U.S. at 529, 91 S.Ct. at 541. A district court may, by local rule or order, limit application of the civil rules "so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available."

*Id.* (citations omitted). The effect of Rule 81(a)(3) is to give district courts discretion in a wide variety of subpoena enforcement proceedings to tailor the Federal Rules to the particular needs and purposes of the proceeding. *See United States v. Southeast First Nat'l Bank of Miami Springs*, 655 F.2d 661, 663 (5th Cir. Unit B 1981). In *Donaldson*, the Court determined that the nature of a tax summons proceeding and the particular purposes for which third parties normally would seek intervention warranted a limitation on normal intervention rights under Rule 24. 400 U.S. at 529, 91 S.Ct. at 541–42.

 In the years since *Donaldson*, courts have recognized that a proceeding to enforce a tax summons is a most appropriate candidate for streamlined procedures. The proceeding is designed for the limited purpose of compelling a taxpayer to comply with a summons previously issued by the IRS. To make its prima facie case for enforcement, the IRS need only show that the investigation will be conducted for a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the IRS's possession, and that the administrative steps required by the Internal Revenue Code have been followed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964); *United States v. Barrett*, 837 F.2d 1341, 1344 (5th Cir.1988) (en banc), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989). Once the Government has carried its burden of proving that the above requirements have been satisfied, the burden shifts to the party resisting the summons to challenge it on any appropriate ground. *Barrett*, 837 F.2d at 1345. Thus, while a proceeding to enforce a summons is an adversary proceeding, *United States v. Roundtree*, 420 F.2d 845, 851 (5th Cir.1969), it is not intended to be a full-blown trial but rather is of a summary nature. *See United States v. Will*, 671 F.2d 963, 968 (6th Cir.1982); *United States v. Kis*, 658 F.2d 526, 535 (7th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). Full application of the Federal Rules may therefore operate to frustrate its limited purpose.

We find that the district court's show cause order of January 24, 1991, adequately apprised McCoy of the proceedings against her and functioned as a permissible modification of Rule 55(b)(2)'s notice-before-default requirement. The show cause order informed McCoy that she should appear in court and demonstrate why she should *not* be required to testify and produce the records demanded in the earlier summons. The implication is that if she did not appear, she would be required to testify and produce the records. The default judgment in this case did not function as a money judgment against McCoy; it simply required her to do what the show cause order implied would be required of her in the event she did not appear. McCoy therefore was given an adequate opportunity to contest the enforcement proceeding at the adversary hearing, an opportunity she decided to forego. We do not think that it was necessary under these circumstances for the Government to follow the procedures of Rule 55(b)(2) and serve the adverse party with written notice of the application for a default judgment.

The proceeding in the district court was merely one to compel McCoy to turn over records which, as the testimony at the hearing showed, the IRS could lawfully obtain. The district judge therefore acted within the power granted him by Rule 81(a)(3) to dispense with the three-day notice requirement before entering a default judgment against McCoy.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's default judgment.