**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-30455

NEW YORK LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

VERSUS

ALVIN J. BROWN,

Defendant-Appellant,

VERSUS

LESLIE A. BROWN,

Defendant-Appellee.

*******************************************************************

No. 95-30786

NEW YORK LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

VERSUS

ALVIN J. BROWN,

Defendant,

and

LESLIE A. BROWN

Defendant-Appellant.

Appeals from the United States District Court

May 15, 1996

Before SMITH, DUHÉ and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

This case involves two separate appeals from the same district court case. Both appeals arise out of an interpleader action brought by New York Life Insurance Company ("New York Life") against Alvin Brown and his ex-wife Leslie Brown seeking to determine who owned several life insurance policies. The district court (1) found that Leslie owned the policies, (2) released New York Life from liability and (3) enjoined both Alvin and Leslie from re-litigating the ownership of the policies in any court. In 95-30455, Alvin appeals the district court's denial of his motion the vacate the judgment. He claims that the judgment against him is void because it was entered without notice. He argues that even though he had defaulted, he was still entitled to notice before summary judgment was granted against him. In 95-30786, Leslie appeals the district court order enjoining her from pursuing the California small claims court actions and a California superior court action against New York Life. We hold that the failure to provide Alvin notice before the summary judgment denied him due process of law. Thus, the district court erred in refusing to vacate the judgment against him. We vacate 95-30455 and remand for further proceedings. Because the summary judgment was inappropriate, we also vacate and remand 95-30786, Leslie's appeal.

## I. BACKGROUND

In March 1971, Plaintiff-Appellee New York Life issued the first of several whole life insurance policies to Defendant-Appellant Alvin Brown. The policy provided for a waiver of premiums if Alvin became disabled. In January 1972, Alvin was found to be totally and permanently disabled because of his war injuries (he lost his left arm in Vietnam), so the premium waiver clause went into effect. Alvin married Defendant-Appellee Leslie Brown in February 1971. In 1980, Alvin and Leslie divorced. On July 4, 1981, ownership of the policies was transferred to Leslie. (Alvin argues that his signature on the change of ownership form was forged).

Leslie claimed ownership of the policies and sought to have New York Life issue two option policies to her. New York Life refused, because it was not sure whether Alvin or Leslie owned the policies. On April 7, 1992, New York Life filed an interpleader action under 28 U.S.C. § 1335 in federal district court in Louisiana, seeking to establish the ownership of the policy. The defendants in the interpleader action were Alvin Brown and his ex-wife Leslie Brown. The federal district court enjoined the defendants from instituting any suits against New York Life concerning the ownership of the policies. The next day, April 8, Leslie filed suit against New York Life in California state small claims court, seeking the issuance of the option policies.[1]  In

_____

[1]  Leslie claims that she did not learn of the interpleader suit and injunction until May 18.

3

May, New York Life filed a notice of the federal injunction in the small claims court and sought to stay the proceedings.  The small claims court apparently ignored that order.  In July, two judgments were entered against New York Life in the small claims cases; New York Life has appealed those judgments.  Leslie stipulated to a stay of the appeals.

When Alvin was sued, two unsuccessful attempts to serve him were made before he was properly served.  On April 15, 1992, the first try was made at "5101 Nicholson A-16" in Baton Rouge, Louisiana.  The remarks on the marshal's return said "Invalid Address According To Current Resident ... No Phone Directory Listing ... Return Unexecuted."  The second attempt was on May 12, 1992, at "3539 Clayton Street" in Baton Rouge.  The remarks on the marshal's return said "Current Resident Advises That Subject Moved -- No Forward ... No Directory Asst. Listing."  The third attempt was successfully made on June 29, 1992 at "4944 Castlebrook Apts #326" in Baton Rouge.

On July 9, 1992, before either defendant answered, Alvin, Leslie and New York Life attended a telephone settlement conference before a magistrate judge.  On August 12, Alvin phoned New York Life's attorney and told her that he had not responded because he had been out of town.  He told her that he was unwilling to stipulate to Leslie's ownership and that he would attempt to retain counsel.  New York Life's attorney notified the court of this conversation by letter.  A status conference was set for September 10, but Alvin declined to participate in it.

On October 13, Alvin still had not answered, so New York Life had a default entered against him.[2]  In October 1992, Leslie filed a motion for summary judgment.  In November, the magistrate ordered the clerk to mail a copy of the motion to Alvin.  The motion was mailed to the Clayton address, which the second marshal's return showed to be invalid.  The letter was returned undelivered.  Summary judgment was granted in January 1993.  The judgment held that Leslie owned the policies and both Leslie and Alvin were permanently enjoined from suing New York Life in any court for a determination of the ownership of the policies.

In February 1994, Leslie, this time represented by counsel, sued New York Life in California state court, alleging that the interpleader was a sham and seeking damages.  In April 1995, the federal district court denied New York Life's motion to enforce the injunction and stop the suits.  In July 1995, however, the court reconsidered that ruling and granted the motion.  Leslie was specifically enjoined from pursuing the California small claims court actions and the California superior court action against New York Life.

In April 1994, Alvin phoned New York Life's attorney to check the status of his case.  He then learned that judgment had been entered over a year earlier recognizing Leslie as the owner of the policies and absolving New York Life of further liability.  In October 1994, Alvin obtained counsel and filed a motion to vacate

_____

[2]  The notice of default was mailed to the Clayton address, which the second marshal's return had shown to be invalid.  It was returned undelivered.

the judgment.  That motion was denied in April 1995.  Alvin filed a timely notice of appeal.

## II. DISCUSSION

A.   95-30455  NEW YORK LIFE V. ALVIN BROWN

Because it is important to keep straight default language, a review of the terms regarding defaults is appropriate.  A *default* is when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules.  An *entry of default* is what the clerk enters when the default is established by affidavit or otherwise.  Fed. R. Civ. P. 55(a).[3]  After defendant's default has been entered, plaintiff may apply for a judgment based on such default.  This is a *default judgment*.

In the instant case, Alvin defaulted because he did not file an answer within the allowed time.  On New York Life's motion, an entry of default was entered against Alvin; a default judgment was never entered.  Instead, Leslie moved for summary judgment, which was granted.

*1.   Whether Alvin "Appeared"*

Alvin complains that he never received notice of the summary judgment.  Leslie contends that because Alvin defaulted, he was not entitled to notice.  We conclude that Alvin appeared in the lawsuit and was thus entitled to notice before the granting of the summary judgment.

---

[3]   All rule references are to the Federal Rules of Civil Procedure.

6

Rule 5 requires that "every written motion ... be served upon each of the parties. No service need be made on parties *in default for failure to appear*." (Emphasis added). "[B]y *appearing* at any time in the action, a party becomes entitled to have his attorney notified of all subsequent proceedings and receive copies of all papers, even if he later chooses to default." WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 1144 (2d ed. 1987) (emphasis added).

In order to determine whether Alvin was entitled to service of the motion for summary judgment, we must first determine whether Alvin's actions rose to the level of an appearance.[4] An appearance "involves some presentation or submission to the court."[5] WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 2686 (2d ed. 1987) (internal

---

[4] Leslie contends that Alvin is raising for the first time on appeal the issue of whether he appeared in the action. While her argument is not without merit, we disagree. No "bright-line rule" exists for determining whether a matter was raised below. *First United Financial Corp. v. Specialty Oil Co.*, 5 F.3d 944, 948 n.9 (5th Cir. 1993). "[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal." *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994). Issues may be raised for the first time in post-judgment motions. *First National Bank of Commerce v. Lamaze*, 7 F.3d 1227, 1229 n.9 (5th Cir. 1993). While Alvin might have raised the issue more specifically, we are persuaded that his motion to vacate the judgment met the threshold level to avoid waiver. Alvin's motion informs the court the he is complaining of a lack of notice before the granting of summary judgment. We are convinced that this was adequate to allow the court to rule on the issue.

[5] This discussion of appearances is drawn from caselaw on Rule 55(b)(2) appearances, which require three days notice and entry of judgment by the court for default judgments when the defendant has appeared. However, Rule 5(a) appearances will be treated the same, as both 55(b)(2) and 5(a) involve defendants who at one time appeared, but later defaulted.

7

quotation omitted). What constitutes an appearance is not "confined to physical appearances in court or the actual filing of a document in the record." *Sun Bank of Ocala v. Pelican Homestead and Savings Assoc.*, 874 F.2d 274, 276 (5th Cir. 1989). Appearances "include a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim." *Sun Bank*, 874 F.2d at 276 (internal quotation omitted). In summary, an appearance is an indication "in some way [of] an intent to pursue a defense." *United States v. McCoy*, 954 F.2d 1000, 1003 (5th Cir. 1992). This is "a relatively low threshold." *Id*.

Alvin took two actions which could be considered appearances: (1) he participated in a telephone conference with the other parties before the magistrate judge and (2) he spoke with counsel for New York Life, informing her that he would not sign a stipulation and that he was attempting to retain counsel to contest the suit. We conclude that Alvin's attendance at the phone conference before the magistrate judge is an appearance, because he actually appeared in court (albeit by phone). Likewise, his phone call to New York Life's counsel, informing him that he would contest the suit, is also an appearance. *Charlton L. Davis & Co. v. Fedder Data Center, Inc.*, 556 F.2d 308, 309 (5th Cir. 1977) (phone call from defendant to plaintiff's attorney, informing him that he intended to contest the suit, considered an appearance). Therefore, because Alvin had appeared in the suit, he was entitled

8

under Rule 5(a) to service of all papers in the suit, including the motion for summary judgment.[6]

### 2. Whether Alvin Received Notice

Because Alvin was entitled to notice, we must determine whether he actually received it. After reviewing the facts, we determine that the district clerk's mailing of the notice to an address it knew from its own documents to be invalid, does not satisfy the notice requirement of Rule 5.

The magistrate judge ordered the clerk to mail a copy of the summary judgment motion to Alvin.[7] The clerk mailed the papers to the Clayton address (where the second unsuccessful attempt at service had been made). In its order denying Alvin's motion to vacate judgment, the district court found that this was not a problem, because Alvin was under a continuing obligation to apprise the court of any address changes.

Rule 5(b) requires service to be made by mailing a copy of the papers "to the attorney or party at the attorney's or party's last known address...." Alvin correctly points out that the Clayton address was not his last known address; his last known address was at the Castlebrook Apartments, where he had been served. The district court's statement that Alvin was under a continuing obligation to notify the court of any change in address is

_____

[6] Rule 56 requires that the summary judgment motion be served at least 10 days before the hearing.

[7] Because Leslie was concerned that Alvin would harm her, special arrangements were made with the court so Alvin would not learn her address. Pursuant to the arrangement, service of all papers from Leslie to Alvin was made through the court.

inapposite: he had not moved.  The court tried to serve him at an address it knew, or should have known, was not his last known address.  Therefore, the attempt at service did not conform with Rule 5, and Alvin did not receive the notice to which he was entitled.

   *3.   Alvin's Motion to Vacate the Judgment*

   Rule 60(b)(4) allows district courts to "relieve a party ... from a final judgment" because the judgment is void.  We typically review district court orders denying Rule 60(b) relief for abuse of discretion.  ***CJC Holdings, Inc. v. Wright & Lato, Inc.***, 979 F.2d 60, 63 (5th Cir. 1992).  "When, however, the motion is based on a void judgment under rule 60(b)(4), the district court has no discretion -- the judgment is either void or it is not." ***Recreational Prop. Inc. v. Southwest Mortgage Serv. Corp.***, 804 F.2d 311, 313 (5th Cir. 1986); WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (2d ed. 1995).  "[T]here is no time limit on an attack on a judgment as void.  The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion." ***Briley v. Hidalgo***, 981 F.2d 246, 249 (5th Cir. 1993)(quoting WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (1973)) (brackets in original).

   In order to determine whether the judgment should be set aside, we must determine whether the judgment is void.  "A judgment

10

is not void merely because it is erroneous." WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (2d ed. 1995) "A judgment 'is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Williams v. New Orleans Public Serv., Inc.*, 728 F.2d 730, 735 (5th Cir. 1984) (quoting WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (1973)).

The district court had both subject matter and personal jurisdiction. Thus, our only inquiry is whether the district court acted in a manner so inconsistent with due process as to render the judgment void. "[O]rdinarily all that due process requires in a civil case is proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1027 (5th Cir. 1982), *cert. denied*, 464 U.S. 818 (1983).

Under our system of justice, the opportunity to be heard is the most fundamental requirement. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("The fundamental requisite of due process of law is the opportunity to be heard."). Without notice of an impending grant of summary judgment, a defendant has no opportunity to be heard. Therefore, Alvin was denied due process of law and the judgment against him is void. *Bass v. Hoagland*, 172 F.2d 205 (5th Cir.), *cert. denied*, 359 U.S. 816 (1949). Because the judgment against him is void, the district

11

court erred in refusing the vacate the judgment under Rule 60(b)(4).

B.    95-30786  NEW YORK LIFE V. LESLIE BROWN

Leslie complains about the district court's permanent injunction prohibiting her from suing New York Life in California for bad faith actions regarding the insurance policy.  Because the judgment against Alvin is vacated, it is yet to be determined whether Leslie or Alvin owns the life insurance policies.  Therefore, there is no final judgment in the case.  As there is no final judgment, a permanent injunction is inappropriate, so it is vacated.  Thus, we need not consider Leslie's claims.

## CONCLUSION

Because the summary judgment against Alvin has been vacated, the case is returned to the same procedural position that existed before the summary judgment was taken.  That is, (1) Alvin has defaulted and an entry of default has been entered against him; (2) Leslie has filed for summary judgment, but that motion has yet to be served on Alvin; and (3) a preliminary injunction exists restraining Leslie and Alvin from instituting any actions against New York Life relative to the life insurance policies.

Because Alvin has defaulted, he must succeed in setting aside the default before he will be permitted to respond to the motion for summary judgment.  Only if a Rule 55(c) motion is made, and granted, will Alvin be allowed to file an answer or a response to the summary judgment motion.  We express no opinion as to how the district court should rule on any Rule 55(a) motion.

12

Leslie has not brought the bad faith action against New York Life as a counterclaim.[8] Should Leslie seek to amend her answer to raise this counterclaim, she may file for leave of the district court to amend her answer.[9] We express no opinion as to whether the district court should grant leave; instead we entrust that decision to the district court's sound discretion. *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983).

The judgments of the district court in both 95-30455 and 95-30786 are VACATED and REMANDED for further proceedings consistent with this opinion.

---

[8] Because we need not reach the issue of the preclusive effect of failing to file a counterclaim on the issue, we express no opinion as to whether the claim is a compulsory counterclaim under Rule 13(a).

[9] One issue Leslie raised, however, does deserve comment. Leslie argued that she did not raise her claims against New York Life at the interpleader level because the district court has enjoined her from doing so. We believe that Leslie misreads the injunction. As we read it, Leslie is prohibited from filing an action related to the policies in any other court. She is not prohibited from filing a counterclaim in the interpleader action. We are aware that Leslie was *pro se* throughout much of the proceeding. Nonetheless, we believe that Leslie should have asked the district court for clarification of its order before she chose to avoid filing a possibly-compulsory counterclaim.