# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 17, 2012

No. 12-10010

Lyle W. Cayce
Clerk

RANDALL D. WOLCOTT, M.D., P.A.,

Plaintiff - Appellant

v.

KATHLEEN SEBELIUS, In Her Official Capacity as Secretary of Health and
Human Services of the United States; TRAILBLAZER HEALTH
ENTERPRISES LLC,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:09-CV-195

Before KING, SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Randall D. Wolcott, M.D., P.A., filed a complaint seeking a writ of
mandamus ordering the Secretary of Health and Human Services and a
Medicare payment administrator to process and pay allegedly outstanding
claims due Wolcott for services it provided to Medicare beneficiaries. After
finding that Wolcott failed to establish a right to mandamus relief because the

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in 5th
Circuit Rule 47.5.4.

No. 12-10010

claims underlying its complaint were moot, the district court entered summary judgment against Wolcott.  For the reasons discussed below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Randall D. Wolcott, M.D., P.A. ("Wolcott"), is a Texas-based professional association that provides wound-care services, including debridement, to Medicare beneficiaries.[1] Defendant-Appellee Kathleen Sebelius, in her official capacity as Secretary of the United States Department of Health and Human Services (the "Secretary"), administers the federal Medicare program.  Defendant-Appellee TrailBlazer Health Enterprises LLC ("TrailBlazer") is a limited liability company that contracts with the Department of Health and Human Services to process and pay Medicare benefits in Texas.

On September 3, 2009, Wolcott filed a seven-count complaint against the defendants seeking mandamus relief in connection with certain claims Wolcott submitted for reimbursement as a Medicare service provider.  As alleged in the complaint, from March 2008 to June 2009, the defendants denied "virtually 100 percent" of Wolcott's debridement claims, worth "a total value of $700,000." Though Wolcott successfully appealed each of these claims through the Medicare administrative appeals process, Wolcott alleged that the defendants nevertheless re-denied successfully appealed claims and refused to pay it for valid claims.

In response, the defendants moved to dismiss the complaint, arguing that the district court lacked subject matter jurisdiction over Wolcott's claims and that Wolcott had failed to plead claims upon which mandamus relief could be granted.  On February 26, 2010, the district court granted the motion and dismissed Wolcott's complaint in its entirety.  Wolcott appealed to this court the decision on five of the seven counts.  On appeal, this court affirmed the district

---

[1] Debridement is "the surgical removal of lacerated, devitalized, or contaminated tissue."  Webster's Third New International Dictionary 582 (1963).

No. 12-10010

court's judgment as to four counts, but reversed and remanded as to one ("Count I"). *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757 (5th Cir. 2011).

In Count I, which forms the primary basis of the current appeal, Wolcott seeks an order in mandamus directing the defendants to pay it for all claims it previously successfully appealed via the administrative appeals process. In explaining why dismissal of Count I was improper at the time of Wolcott's first appeal, this court held that subject matter jurisdiction then existed for that claim, pursuant to the Mandamus and Venue Act, because Wolcott "ask[ed] the district court to order the defendants to complete affirmative actions to fulfill their allegedly nondiscretionary duties under the law."[2] *Id.* at 766. Next, the court explained that, at that time, Wolcott had stated a claim for mandamus relief under Count I by sufficiently pleading that it "ha[d] a clear right to relief, that the defendants owe[d] a non-discretionary duty to issue payment to Wolcott for appealed claims finally decided in Wolcott's favor, and that no adequate alternative remedies exist[ed]." *Id.* at 771. This claim was supported, the court highlighted, by "a fully favorable decision by an administrative law judge ('ALJ'), dated June 23, 2009, which reversed the denial of ninety-five debridement claims for services rendered in April and May 2008 and concluded that 'the provider is entitled to Medicare payment for services rendered in every case.'" *Id.* at 768.[3]

---

[2] Section 1361 of the Mandamus and Venue Act provides that "[t]he district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Of note, the *Wolcott* court also explained, contrary to the defendants' argument in that case, that relief under 28 U.S.C. § 1361 was not precluded by the Medicare Act. 635 F.3d at 763–66.

[3] The record reflects some disagreement between the parties as to the actual date of this ALJ decision, with some documents reflecting the date of June 23, 2009 and others showing the date of June 24, 2009. The explanation for this discrepancy seems to be that the order, originally issued on June 23, 2009, was amended on June 24, 2009 to include an appendix that was apparently inadvertently omitted from the June 23, 2009 decision. To

No. 12-10010

Presumably because the sole issue still in contention on remand was whether payment had been made on the Medicare claims underlying Count I, the district court entered the following order on October 7, 2011:

> If the relief requested in Count I has become moot since the filing of Plaintiff's Complaint, the parties should notify the Court promptly. In the event a dispute remains, motions for summary judgment on Count I should be filed on or before 3:00 p.m. on November 4, 2011, with any responses due 21 days after the filing of the motions.

Despite the district court's explicit order to do so, Wolcott chose not to file a summary judgment motion. Instead, on the day that motion was due, it filed: (1) a motion for, and memorandum in support of, the issuance of a scheduling order, and (2) a motion and supporting appendix for leave to file a first amended complaint, which Wolcott asserted would cure the defect in one of the previously dismissed claims. In neither of these filings did Wolcott expressly discuss the continued vitality of the Medicare claims underlying Count I.

The defendants, on the other hand, complied with the district court's order, filing their summary judgment motion on November 4, 2012. In that motion, the defendants argued, *inter alia*, that Wolcott failed to demonstrate a right to mandamus relief because the Medicare claims relating to Count I, as reflected in the June 23, 2009 ALJ decision, had already been paid, and Wolcott's mandamus claim was therefore moot. To substantiate this assertion, the defendants attached to their motion: (1) an affidavit in which a TrailBlazer employee stated that TrailBlazer had paid Wolcott in accordance with the June 23, 2009 ALJ decision, and (2) a spreadsheet setting out the claim number and payment information for each of the payments.[4]

---

maintain consistency with *Wolcott*, and because the substantive aspects of the decision were addressed in the June 23, 2009 decision, this court will use that date when referring to the decision.

[4] Notably, that spreadsheet purportedly shows not only payments made in connection with the June 23, 2009 ALJ decision, but also payments made for claims not required by that

4

No. 12-10010

On November 18, 2011, the defendants filed an unopposed motion for an extension until November 28, 2011 to respond to Wolcott's pending motions. Wolcott likewise filed an unopposed motion on November 18, 2011, requesting an extension until December 5, 2011 to respond to the defendants' summary judgment motion.  The district court granted each motion.

On November 28, 2011, the defendants filed a brief opposing Wolcott's motions for issuance of a scheduling order and leave to amend its complaint.  As to the former, the defendants asserted that there was no need for a scheduling order because, as they had argued in their summary judgment motion, the Medicare claims at issue in Count I already had been paid, thus mooting Wolcott's claim for mandamus relief.  As to Wolcott's motion for leave to amend, the defendants asserted that Wolcott's proposed amendment would prejudice the defendants, would not cure the defect that had caused the previous dismissal of the claim at issue, and would be futile insofar as it would not survive a motion to dismiss.

Without waiting for Wolcott's response to the defendants' summary judgment motion, the district court entered summary judgment against Wolcott on December 1, 2011—four days before Wolcott's response was due.  In its order, the district court ruled that Count I was moot because the defendants had provided uncontroverted evidence that they had paid the claims covered by the June 23, 2009 ALJ decision.  The court also denied Wolcott's motion for leave to amend, on the ground that the amendment would not cure the defect in the previously dismissed claim.

Wolcott timely appeals, claiming that the district court erred in entering summary judgment against it.  In particular, Wolcott argues that the court deprived it of its due process rights to notice and a meaningful opportunity to be

decision.

5

heard. Wolcott also argues that the district court erroneously denied its motion for leave to amend.

## II. STANDARD OF REVIEW

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). "After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence.").

## III. DISCUSSION

On appeal, Wolcott argues that the district court violated its right to due process by "fail[ing] to give Wolcott notice that [the court] was about to enter summary judgment against it." We disagree.

### A.     Notice and Opportunity

In the summary judgment context, "[t]his court has explained that strict enforcement of the notice requirement is necessary because summary judgment is a final adjudication on the merits." *Powell v. United States*, 849 F.2d 1576, 1579 (5th Cir. 1988). Accordingly, providing notice in connection with summary judgment "is not an unimportant technicality," but rather gives the opposing

party an opportunity to contest entry of summary judgment against it. *Hanson v. Polk Cnty. Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979).

Relying on these principles, Wolcott cites to *Powell* and *New York Life Insurance Co. v. Brown*, 84 F.3d 137 (5th Cir. 1996), to support its argument that it was denied notice and a meaningful opportunity to be heard. In *Powell*, this court considered the propriety of a district court's *sua sponte* entry of summary judgment against taxpayers who were seeking a federal income tax refund. 849 F.2d at 1577. The record revealed that "the district court judge first gave plaintiffs notice that he might enter summary judgment" against them just hours before actually doing so. *Id.* Given the importance of providing adequate process at the summary judgment stage, we explained that because "a summary judgment forecloses any future litigation of a case[,] the district court must give proper notice to insure that the nonmoving party had the opportunity to make every possible factual and legal argument." *Id.* We found that the few hours' notice the taxpayers received "was surely not sufficient time to allow [their] counsel to submit all of its legal and factual arguments." *Id.* at 1579–80. Accordingly, we reversed the district court's judgment. *Id.* at 1582.

Wolcott also cites to *Brown*, in which we stated that "[w]ithout notice of an impending grant of summary judgment, a defendant has no opportunity to be heard . . . [and is] denied due process of law." 84 F.3d at 143. In *Brown*, the party challenging entry of summary judgment against it had not received notice of the impending judgment because the district clerk had mailed "the notice to an address it knew from its own documents to be invalid." *Id.* at 142. Acknowledging that "[u]nder our system of justice, the opportunity to be heard is the most fundamental requirement," we vacated the district court's summary judgment order. *Id.* at 143.

The authority Wolcott offers undoubtedly evidences the necessity of providing litigants with notice of impending entries of summary judgment. *See*

No. 12-10010

*Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 79 (5th Cir. 1992) ("We encourage—we require—district courts to give parties full notice of a possible summary judgment against them; we will reverse such a judgment when the court fails to do so."). Nonetheless, the cases Wolcott cites are distinguishable from the situation presented here. First, unlike in *Powell*, where the plaintiffs had only a few hours' notice that the court was considering summary judgment, Wolcott had nearly two months notice here—from October 7, 2011, when the court ordered the parties to submit summary judgment motions, until December 1, 2011, when the court entered summary judgment.[5] Second, unlike in either *Powell* or *Brown*, the district court here explicitly ordered the parties to submit summary judgment motions by a certain date. In that order, in accordance with Rule 56(f), the court "identif[ied] for the parties material facts that may not [have been] genuinely in dispute," by stating that the parties were to "notify the Court promptly" "[i]f the relief requested in Count I has become moot since the filing of Plaintiff's Complaint." *See* Fed. R. Civ. P. 56(f). Alternatively, the order stated that the parties should file summary judgment motions "[i]n the event a dispute remains."

The district court thus put Wolcott on notice that it was contemplating summary judgment. Moreover, by directing each party to submit a summary judgment motion, and by giving it a reasonable time to do so, the court also provided Wolcott with the opportunity "to submit all of its legal and factual arguments." *Powell*, 849 F.2d at 1580. That Wolcott failed to take advantage of that opportunity does not constitute judicial error.

B.     **Establishing an Entitlement to Mandamus Relief**

---

[5] Furthermore, in contrast to the current version of Rule 56, *see* Fed. R. Civ. P. 56(f), the version of that rule in effect when *Powell* was decided did "not speak to summary judgment on the court's own motion." *Powell*, 849 F.2d at 1578.

No. 12-10010

Wolcott has also failed to satisfy the burden it carried in seeking mandamus relief. Mandamus jurisdiction in federal courts is codified by 28 U.S.C. § 1361, which provides that "[t]he district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is, however, "an extraordinary remedy." *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998). "Before mandamus is proper, three elements must generally co-exist. A plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available." *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir. 1984). In expounding upon these requirements, we have explained that mandamus is proper "only when the plaintiff's claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992) (quoting *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983)) (internal quotation omitted). Thus, the party seeking mandamus bears a "heavy burden" of establishing its entitlement to such extraordinary relief. *Dresser v. Ohio Hempery, Inc.*, 122 F. App'x 749, 755 (5th Cir. 2004) (unpublished).

Given the extraordinary nature of mandamus relief, and Wolcott's burden of establishing its entitlement to such relief, Wolcott was *continually* on notice that it had to provide sufficient evidence to satisfy the mandamus standard. In particular, Wolcott was aware that, to demonstrate a right to a writ of mandamus, it was required to establish its clear right to relief and the defendants' clear duty to provide that relief. Nevertheless, after remand from its previous appeal, Wolcott failed to show its entitlement to such an extraordinary remedy.

In fact, after remand, Wolcott provided nothing to the district court to support its allegation that successfully appealed Medicare claims still remained

unpaid by the defendants.  While the *Wolcott* court had stated that Count I initially was supported by the fully favorable June 23, 2009 ALJ decision, the defendants' summary judgment motion—filed in response to the district court's October 7, 2011 order—included evidence demonstrating that all claims subject to that decision already had been paid.  Wolcott presented nothing to the district court that challenged this evidence.  Moreover, although Wolcott asserts that the claims addressed in the June 23, 2009 ALJ decision represented only an "example" set of the claims it purported to assert under Count I, Wolcott offered no evidence after remand of a right to other payments beyond those discussed in that decision.[6]  In failing to provide such evidence, Wolcott also failed to carry its burden—as required in a mandamus action—of demonstrating that its right to relief was clear and that the duty of the defendants was so plainly prescribed as to be free from doubt.  *See Giddings*, 979 F.2d at 1108.

Of course, Wolcott argues that it failed to meet this burden only because it was denied an opportunity to oppose the defendants' summary judgment motion and to introduce evidence it may have had of other unpaid Medicare claims.  As we have discussed, however, Wolcott ignores that it had the *affirmative* obligation to demonstrate its right to mandamus relief.  In ordering the parties to file summary judgment motions, the district court provided Wolcott the opportunity to satisfy that obligation by introducing evidence of its entitlement to mandamus relief.  Again, however, when given this opportunity, Wolcott failed to seize it.

Wolcott now suggests that it would have been improper for it to file a summary judgment motion because it believed there was a genuine dispute as

---

[6] Although Wolcott's complaint included by attachment other favorable ALJ decisions, those decisions were evidently introduced to support other counts that were eventually dismissed by this court in *Wolcott*.  Wolcott's counsel conceded during oral arguments in this case that the only evidence in the record related to Count I was the June 23, 2009 ALJ decision.

No. 12-10010

to whether the claims at issue actually had been paid. Accordingly, Wolcott asserts that filing a summary judgment motion while entertaining this belief would have been a violation of Rule 11, which requires parties to certify that motions submitted to a court are "warranted by existing law" and contain "factual contentions [that] have evidentiary support." Fed. R. Civ. P. 11(b).[7]

In advancing this argument, Wolcott appears to take issue with the district court's order requiring the parties to file summary judgment motions. Nevertheless, when the district court first entered that order, Wolcott did not object to it. Further, it is well settled that district courts have the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). While that authority may not be exercised "where the [Rules of Civil Procedure] directly mandate a specific procedure to the exclusion of others," such was not the case here. *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1408 (5th Cir. 1993) (quoting *Landau & Cleary, Ltd. v. Hribar Trucking, Inc.*, 867 F.2d 996, 1002 (7th Cir. 1989)). Moreover, to the extent Wolcott believed the district court improperly exercised its docket management authority by ordering the parties to file summary judgment motions, or by later granting the defendants' motion before Wolcott was required to respond to it, the rules provide various mechanisms by which Wolcott could have asserted its position. Rule 59(e), for example, allows a party to file a motion to alter or amend a judgment, while Rule 60(b) permits a party to seek relief from a judgment or order. Fed. R. Civ. P. 59(e), 60(b). Notwithstanding these avenues by which Wolcott could have challenged any perceived overreach in the court's

---

[7] Wolcott first raised this argument on appeal, and, even then, only in its reply brief. This court generally does "not consider arguments raised for the first time on appeal," *In re Paige*, 610 F.3d 865, 871 (5th Cir. 2010), though for the reasons noted, Wolcott's argument is, in any event, unavailing.

No. 12-10010

orders, or otherwise could have demonstrated its entitlement to mandamus relief, Wolcott failed to file any post-judgment motions in the district court.

Finally, Wolcott alternatively frames the alleged due process violation as one caused by the district court's failure to give Wolcott time to respond to the defendants' summary judgment motion. As we have explained, however, in making this argument, Wolcott ignores that the district court may enter summary judgment *sua sponte* and that, in seeking a writ of mandamus, Wolcott had an affirmative duty to show its entitlement to the extraordinary remedy of mandamus relief. Despite numerous opportunities to do so, Wolcott failed to demonstrate that any Medicare claims associated with Count I remained unpaid by the defendants following remand.

As the district court held, because Count I constituted the sole issue still in contention after remand, Wolcott's failure to demonstrate a live case or controversy associated with that count rendered moot the only remaining aspect of the case.[8] *See Deakins v. Monaghan*, 484 U.S. 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."); *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999) ("A moot case presents no Article III case or controversy. . . ."). Accordingly, the district court did not err in granting summary judgment in the defendants' favor.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[8] As we have noted, Wolcott filed a motion for leave to amend and now argues that the district court erred in denying it. We need not address that issue. "[T]he mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004). As the district court explained in its order, Wolcott's proposed amendment was functionally no different from the claim already dismissed, which dismissal we affirmed in *Wolcott*. The court thus concluded that "for the same reasons already articulated [in *Wolcott*], it would be improper to allow Plaintiff's proposed amended pleading." We agree.