ACCEPTED
04-15-00350-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/16/2015 12:00:00 AM
KEITH HOTTLE
CLERK

# No. 04-15-00350-CV

## In the Court of Appeals for the Fourth Judicial District of Texas San Antonio

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/16/2015 3:38:00 PM
KEITH E. HOTTLE
Clerk

**Jack Rettig,**

*Appellant,*

**v.**

**Ronald Bruno, et al,**

*Appellees.*

## BRIEF OF APPELLEE CHRISTOPHER GARCIA

**BECKSTEAD TERRY, PLLC**

Jana K. Terry
State Bar No. 24003041
9442 N. Capital of Texas Hwy
Arboretum Plaza One, Suite 500
Austin, TX 78759
(512) 827-3574
(855) 845-3262 fax
jterry@becksteadterry.com

Attorneys for Appellee
Christopher Garcia

**Oral Argument Requested**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... ii

INDEX OF AUTHORITIES................................................................................v

STATEMENT OF THE CASE........................................................................ viii

STATEMENT REGARDING ORAL ARGUMENT ............................................ ix

ISSUES PRESENTED.................................................................................... ix

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................1

    A.    Appellees enter into a promissory note in connection with a purchase transaction. ....................................................................................1

    B.    Appellant sues Appellees in the Louisiana Court. ................................1

    C.    Appellant attempts to domesticate by filing in Harris County, Texas but the court finds venue improper. ...................................................7

    D.    Appellant's domestication case is opened in Webb County and Appellees file motions to vacate the proffered judgment. ...................8

    E.    Appellant requests that the Louisiana Court enjoin Appellees from seeking vacatur of the Proffered Judgment, but the Louisiana Court refuses to issue the requested injunction..............................................9

    F.    Appellees submit to the Webb County Trial Court sworn declarations to support their Motions to Vacate.....................................................10

    G.    In response to the Motions to Vacate, Appellant submits an affidavit of his attorney, to which various emails are attached. ........................11

    H.    The Webb County District Judge conducted a hearing on the Motions to Vacate, stated that she would consider all documents in the record prior to ruling, and, thereafter, granted the motions to vacate...........13

SUMMARY OF ARGUMENT ...........................................................................14

ARGUMENT ...............................................................................................15

I.      The Trial Court's plenary power had not expired when it granted Mendoza's and Garcia's post-judgment motions and vacated the Proffered Judgment..15

      A.      When a foreign judgment is filed in an action brought under the UEFJA, it is simultaneously both a Texas petition and a Texas judgment.................................................................................16

      B.      The general venue rules apply to UEFJA actions to domesticate foreign judgments.................................................................16

      C.      The post-judgment deadlines apply to domesticated judgments but they do not begin to run until the foreign judgment is properly filed in a proper venue. ...............................................................17

      D.      Because Garcia and Mendoza filed their Motions to Vacate within thirty days after the case was first docketed by the Webb County District Clerk, the Motions to Vacate were timely and the Trial Court's plenary power did not expire prior to issuance of the orders vacating the judgment. ...................................................................21

II.     The Trial Court did not abuse its discretion in finding that Garcia and Mendoza had shown, by clear and convincing evidence, that the Proffered Judgment was not entitled to full faith and credit. ......................................22

      A.      A trial court may vacate a foreign judgment proffered for domestication when, in the exercise of its discretion, it weighs the competent evidence under a clear and convincing evidence standard, and finds that the foreign judgment is non-final or void for lack of jurisdiction or due process..............................................22

      B.      The Trial Court did not abuse its discretion in finding that Appellees had met their burden to show that the foreign judgment was void as to Mendoza. ...............................................................34

      C.      Having found that the Louisiana Judgment is void as to Mendoza, the Trial Court properly vacated the Proffered Judgment in its entirety – as to all Appellees.................................................................41

CONCLUSION AND PRAYER ............................................................43

CERTIFICATE OF COMPLIANCE.....................................................45

CERTIFICATE OF SERVICE .............................................................46

# INDEX OF AUTHORITIES

**Cases**

*Bahr v. Kohr*, 928 S.W.2d 98, 100.................................................................16

*Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex. 1992).........
............................................................................................... 23, 24

*Bavishi v. Aladabbagh,* 2009 WL 5149934, at *1-3 (N.J. Super. Ct. App. Div. Dec. 31, 2009) ......................................................................................33

*Brown's Inc. v. Modern Welding Co.*, 54 S.W.3d 450 (Tex. App. – Corpus Christi 2001, no pet.) ................................................................. 24, 33

*Cantu v. Howard S. Grossman, P.A.*, 251 S.W.3d 731, 740-41 & n.8 (Tex. App. – Houston [14th Dist.] 2008, pet. denied) .................................... 16, 17, 20, 21

*Cash Register Sales & Serv. Of Houston, Inc. v. Copelco Capital, Inc.,* 62 S.W.3d 278, 281 (Tex. App. – Houston [1st Dist.] 2001, no pet.)...................... 24, 28

*Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex. 1988) ..........................................................................................27

*Corporate Leasing Int'l, Inc. v. Bridewell*, 896 S.W.2d 419, 422 (Tex. App. – Waco 1995, no writ) ............................................................. 34, 41

*Counsel Financial Services, L.L.C. v. David McQuade Leibowitz, P.C.*, 311 S.W.3d 45, 51 (Tex. App – San Antonio 2010, pet. denied) ................. 23, 24

*Director, State Employees Workers' Compensation Division v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994) ........................................................................ 28, 29

*Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003) ...............25

*Fincher v. Wright*, 141 S.W.3d 255, 262 (Tex. App. – Fort Worth 2004, no pet.).....
........................................................................................ 19, 20

*Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex. 1982)................................. 29, 30

*Helms v. Texas Alcoholic Beverage Comm.*, 700 S.W.2d 607, 615 (Tex. App. – Corpus Christi 1985, no writ)....................................................30

*In re Guardianship of Parker*, 329 S.W.3d 97, 100 (Tex. App. – Amarillo 2010,

pet. denied) ................................................................................ 26, 28

*In re Interest of AV*, 849 S.W.2d 393, 402 (Tex. App. – Fort Worth 1993, no writ)
..................................................................................... 29, 30, 31

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) ...................................................27

*Jack H. Brown & Co. v. Northwest Sign Co.*, 665 S.W.2d 219, 222 (Tex. Civ. App.
– Dallas 1984, no writ) ........................................................19

*Karstetter v. Voss*, 184 S.W.3d 396, 401 (Tex. App. – Dallas 2006, no pet.).............
.................................................................... 17, 18, 26, 27, 28

*Lee v. Dykes*, 312 S.W.3d 191, 198 (Tex. App. – Houston [14th Dist.] 2010, no
pet.) ...............................................................................29

*Lee v. State*, 29 S.W.3d 570, 578 (Tex. App. – Dallas 2000, no pet.).....................30

*Mindis Metals Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 484 (Tex.
App. – Houston [14th Dist.] 2004, pet. denied) ................................... passim

*Moncrief v. Harvey*, 805 S.W.2d 20, 23 (Tex. App. – Dallas 1991, no writ)..........26

*Moritz v. Preiss,* 121 S.W.3d 715, 720-21 (Tex. 2003)................................... 21, 28

*New York Life Ins. Co. v. Brown,* 84 F.3d 137, 142-43 (5th Cir. 1996)........... 25, 26

*Onyeanu v. Rivertree Apartments*, 920 S.W.2d 397, 398 (Tex. App. – Houston [1st
Dist.] 1996, no writ).................................................................29

*Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 525 (1986) ..........................42

*Pena v. State*, 467 S.W.3d 71, 75 (Tex. App. – San Antonio 2015, no pet.) ... 32, 37

*Peters v. Top Gun Executive Group,* 396 S.W.3d 57, 61 (Tex. App. – Houston
[14th Dist.] 2013, no pet.)................................................... 27, 28

*Playnation Play Systems v. Guajardo,* No. 13-06-00302-CV, 2007 WL 1439740, at
*3 (Tex. App. – Corpus Christi 2007, no pet.)...............................24

*Porras v. Craig*, 675 S.W.2d 503, 505 .................................................................29

*Raj v. Tomasetti*, No. 03-1993, 2008 WL 2718905, at *3 (E.D. La. July 11, 2008)
.......................................................................................42

*Reading & Bates Const. Co. v. Baker Energy Resources Corp.*, 976 S.W.2d 702, 713 (Tex. App. – Houston [1st Dist.] 1998, pet. denied) ..............................27

*Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex. 1993) ........................................19

*Russo v. Dear*, 105 S.W.3d 43, 46 (Tex. App. – Dallas 2003, pet. denied) ............23

*Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. – 2012) .............. 31, 32, 37

*Ussery v. State*, No. 03-07-00116-CR, 2008 WL 269439, at *7 (Tex. App. – Austin Jan. 30, 2008, pet. ref'd) ...............................................................................32

*Walnut Equip. Leasing Co., Inc. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996)............16

*West ex rel. Clark v. Taylor*, No. 04-04-00119-CV, 2004 WL 2715396, at *2 (Tex. App. – San Antonio Dec. 1, 2004, no pet.) ...................................................19

**Statutes and Rules**

Eastern District of Louisiana Local Rule 5.4.................................................... 25, 26

FED. R. CIV. P. 5(a)(1) ...........................................................................................25

FED. R. CIV. P. 5(b)(1), (2)(C)...............................................................................25

FED. R. CIV. P. 54(b) .............................................................................................42

FED. R. CIV. P. 60(b) ......................................................................................... 24, 25

FED. R. CIV. P. 60(b)(4)..........................................................................................26

TEX. CIV. PRAC. & REM. CODE § 15.002(a)(2) ......................................................17

TEX. CIV. PRAC. & REM. CODE § 15.064(b)...................................................... 18, 21

TEX. CIV. PRAC. & REM. CODE § 35.003(c) ...........................................................17

TEX. R. CIV. P. 329b........................................................................... 17, 18, 20

**Constitutional Provisions**

U.S. CONST. art. IV, § 1 .........................................................................................22

## STATEMENT OF THE CASE

*Nature of the Case*          This case involves Appellant Rettig's attempt to domesticate a foreign judgment.

Appellant Rettig obtained a judgment against the Appellees in a Louisiana federal court. (CRI 24). He obtained the judgment as a result of a motion for summary judgment, which was not mailed to the Appellees, who were proceeding pro se, and an *ex parte* motion for entry of final judgment. (CRI 468, 478, 485 & 487). A few days after obtaining the Louisiana judgment, he initiated an action in Harris County, Texas to domesticate the judgment under the Texas Uniform Enforcement of Foreign Judgments Act. (CRI 20). As venue was improper in Harris County, the case was transferred to Webb County. (CR 17). Following the opening of the case in Webb County, Appellees moved to vacate the judgment proffered for domestication in Texas. (CRI 286-93, 443-507 & CRII 710-915).

*Trial Court*:          The Honorable Monica Z. Notzon, 111th District Court, Webb County, Texas

*Trial Court Disposition*: The trial court signed two orders granting Appellee Garcia's and Appellee Mendoza's motions to vacate the foreign judgment that Appellant had proffered for domestication in Texas. (CR II 1043-44, 1051-56 [App. A]).

## STATEMENT REGARDING ORAL ARGUMENT

Appellee agrees that the decisional process would be significantly aided by oral argument. The procedural history of the case is complex, as is the interplay between multiple courts (federal and state) and the application of the Texas Rules of Civil Procedure to judgment domestication actions.

## ISSUES PRESENTED

1.      Did the trial court's plenary power expire before it entered the orders vacating the judgment proffered for domestication?

2.      Did the trial court abuse its discretion in finding that the Louisiana judgment was void and not enforceable in Texas under the Uniform Enforcement of Foreign Judgments Act?

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This case arises from Appellant Jack Rettig's ("Appellant's") attempt to domesticate, through the Texas Uniform Enforcement of Foreign Judgments Act (the "UEFJA"), a judgment rendered by a federal court in Louisiana (the "Louisiana Court") on September 30, 2014 (the "Proffered Judgment") in Civil Action No. 2:14-cv-00996-LMA-SS in the United States District Court for the Eastern District of Louisiana (the "Louisiana Case"). The Proffered Judgment was rendered in the amount of $2,692,895.23, plus interest, against five individuals: Christopher Garcia ("Garcia"), Patrick G. Mendoza ("Mendoza"), Sergio Lopez, Ronald E. Bruno, and Troy J. Williams (together, the "Appellees"). The chronology of events is below:

**A.      Appellees enter into a promissory note in connection with a purchase transaction.**

In November 2013, Appellees, who were members of Nogal Energy, LLC ("Nogal") and Triple T Coil Tubing, LLC ("Triple T"), entered into a promissory note payable to Appellant in connection with Nogal's purchase of oil field equipment (the "Equipment Purchase Transaction") from a company owned by Appellant. (CRI 97-100). The promissory note was secured by collateral owned by Nogal and Triple T. (CRI 100). Together with Nogal and Triple T, Appellees subsequently entered into a forbearance agreement. (CRI 100-117).

**B.      Appellant sues Appellees in the Louisiana Court.**

In April 2014, Appellant sued Appellees on the note and forbearance

1

agreement in the Louisiana Case. (CRI 26-31). Contrary to Appellant's assertions, this is not a "straightforward action to collect on a promissory note." (CRI 469). Nogal and Triple T have sued Rettig and his company for fraud and fraudulent inducement in connection with the Equipment Purchase Transaction to which the note and forbearance agreement are related. (CRII 888-905). And in his Federal Rule of Civil Procedure Rule 60(b) motion to the Louisiana Court, Appellee Mendoza has presented evidence that the note was actually paid. (CRII 886-87). However, as set forth below, the pro se Appellees did not have an adequate chance to defend the Louisiana Case on the merits because the Louisiana Court granted a motion for summary judgment without the Appellees having been served with the motion.

**1.     July 2, 2014: The Louisiana Court enters a scheduling order.**

On July 2, 2014, the Louisiana Court entered a scheduling order. (CRI 456). The scheduling order provided for a discovery period ending on November 3, 2014. *Id*. Trial was set for January 2015. *Id.*

**2.     August 13, 2014:  The Louisiana Court holds a status conference and permits defendant to file a motion for summary judgment.**

On August 13, 2014, the Louisiana Court held a scheduled status conference. (CRI 456). Immediately following the conference, the Louisiana Court entered an order permitting *Defendant* to file a motion for summary judgment. *Id.* There is no

2

indication that Plaintiff (Appellant) was likewise permitted to file a motion for summary judgment. *Id.*

**3.     Friday, August 15, 2014:  Purported counsel for Appellees moves to withdraw from representing Appellees in the Louisiana Case.**

The Docket Sheet for the Louisiana Case indicates that William J. Kelly, III ("Kelly"), the attorney who filed an answer for the Appellees in the Louisiana Case, (CRI 456), filed a motion on Friday, August 15, 2014 to withdraw from representing the Appellees (the "Motion to Withdraw").  (CRI 460-464).  Kelly did not give reasons to support his Motion to Withdraw, and did not indicate whether the Appellees were aware of, opposed to or in agreement with the Motion to Withdraw. *Id.*  Similarly, Kelly did not request that the Appellees be given time to find substitute counsel. *Id.*  Kelly did, however, provide last known addresses for the Appellees. *Id.* at 462.  The Motion to Withdraw also noted the November 2014 discovery deadline and the January 2015 trial setting. *Id.* at 461. The Motion to Withdraw did *not,* however, disclose that the Court had just entered an order authorizing a defendant to file a motion for summary judgment. *Id.* at 460-464.  The Motion to Withdraw was served on the Appellees on Friday, August 15, 2015 by certified mail to the last known addresses. *Id.* at 464.

**4.     Monday, August 18, 2014:  The Louisiana Court grants Kelly's Motion to Withdraw.**

Although Kelly's Motion to Withdraw did not contain any certification as to

whether his clients were opposed, unopposed or even aware that he was filing a Motion to Withdraw, and his certificate of service indicated that he was serving the Motion to Withdraw on Appellees by certified mail deposited on Friday, August 15, 2014, the Louisiana Court granted the Motion to Withdraw the very next business day (Monday, August 18, 2014) without providing any opportunity for the Appellees to be heard. (CRI 464; CRII 695).

**5. Tuesday, August 19, 2014: Appellant immediately moves for summary judgment against the now-pro se Appellees but fails to serve them with the motion or the notice of submission.**

On August 19, 2014, two business days after the Motion to Withdraw was filed and one day after the Motion to Withdraw was granted without a hearing, Appellant took advantage of the fact that none of the Appellees was then represented by counsel and filed a motion for summary judgment (the "MSJ"), even though such had not been authorized by the Court's August 13, 2014 order. (CRI 457, 467-68). Appellant's counsel also filed in the Louisiana Case a Memorandum in Support, a Statement of Contested/Uncontested Facts, and a Notice of Submission on behalf of "Rolls-Royce Marine North America, Inc." stating that the MSJ would be submitted to the Louisiana Court for a decision only fifteen days later – on September 3, 2014 at 9:00 a.m. (together, the "MSJ Documents") (CRI 469-490).

According to the certificates of service for each of the MSJ Documents, Appellant filed the MSJ Documents "by using the CM/ECF system, which will send

4

a notice of electronic filing to all participating counsel of record." (CRI 468, 478, 485, 487). However, as of August 19, 2014 (the date of the certificate of service), the Appellees had *no* counsel of record. (CRII 695). Appellant's counsel noted further that, "[a]s a courtesy," he had "served a copy of the [MSJ Documents] upon attorney Adriana R. Midkiff (armidkiff@armidkifflaw.com) via electronic mail." (CRI 468, 478, 485, 487). Appellant's counsel did not indicate why he had served Adriana Midkiff ("Midkiff") with a "courtesy" copy and he did not indicate any parties that he believed were represented by her. *Id.* What is clear, though, is that **Appellant did not serve any of the MSJ Documents on the Appellees at their last known addresses** identified in Kelly's Motion to Withdraw. *Id.* **This fact is undisputed**. (RR 53:17-20) (Appellant's counsel admitting that the MSJ was not sent to Mendoza).

6. **Monday, September 22, 2014: The Louisiana Court denies Garcia's motion to extend the submission date and grants Appellant's motion for summary judgment.**

Two of the three pro se Appellees became aware of the MSJ and retained new counsel. (CRI 457). However, when their counsel requested an extension of the submission date, the Louisiana Court denied the request, (CRII 1014), even though the Local Rules for the Eastern District of Louisiana require (a) that a defendant have at least fifteen days of "actual notice" before a motion for summary judgment is submitted for ruling and (b) that the motion for summary judgment and the

5

memorandum in support be served with the notice of submission. (CRI 501) (Local Rule 7.2). Orders briefly extending the briefing schedule were entered and, presumably served on Mendoza by the Court's clerk a few days before the MSJ's submission date, but these orders did not explicitly indicate that the pending motion for summary judgment pertained to claims against Mendoza. (CRII 1012-17).

Thereafter, despite Appellant's failure to serve the now-pro se Appellees with the MSJ Documents (including the confusingly-captioned "Rolls-Royce" notice of submission), and without conducting a hearing or otherwise confirming notice to Mendoza, Sergio Lopez or Troy Williams of any of the MSJ Documents, on September 22, 2014, the Louisiana Court granted Plaintiff's motion for summary judgment. (CRII 630-36).

**7.    Thursday, September 25, 2014:  The Louisiana Court orders all parties to a settlement conference.**

Three days after granting Appellant's motion for summary judgment, all parties were ordered to a settlement conference scheduled for October 28, 2014 before the magistrate judge. (CRII 1032). The order contains no explanation for why the settlement conference was called. *Id.* The order required Appellant to make a settlement offer (and Appellees to make a counter-offer) in advance of the scheduled conference. *Id.* Presumably, the Louisiana Court's clerk served this order on Mendoza by mail to his last known address. (CRI 1030-31).

6

**8. Friday, September 26, 2014: Appellant Filed an Ex Parte Motion for Entry of Judgment.**

One day after the Order Scheduling Settlement Conference was issued, Appellant filed an "Unopposed Ex Parte Motion for Entry of a Judgment." (CRI 458); *see also Rettig v. Bruno*, Civil Action No. 2:14-cv-00996-LMA-SS, Document No. 41 (Sept. 26, 2014), at 1. The *ex parte* motion represented that "opposing counsel" had no objection to immediate entry of judgment. *Id.* No mention was made of the pro se Appellees. *Id.*, *passim*. Once again, however, the certificate of service indicates that Appellant failed to serve Mendoza. *Id.* at 5.

**9. Tuesday, September 30, 2014: The Louisiana Court enters a judgment against all Appellees.**

On the *ex parte* request of Appellant, on September 30, 2014, the Louisiana Court entered a Judgment against all Appellees five days after forwarding to Mendoza an order requiring Appellant to make a settlement offer and appear at a settlement conference on October 28, 2014. (CRI 24; CRII 1032). The judgment was, presumably, forwarded to Mendoza by the Court's clerk. (CR 1034-35). **This was the first document sent to Mendoza that explicitly indicated that Appellant had sought a summary judgment on his claims against *Mendoza*.** (CRI 24).

**C. Appellant attempts to domesticate by filing in Harris County, Texas but the court finds venue improper.**

On Friday, October 3, 2014, *only three (3) days after entry of the Proffered Judgment*, Appellant filed the Proffered Judgment in the Harris County District

7

Court and began aggressive collection efforts against all of the Appellees. (CRI 20-34; CRII 649-651). The filing in Harris County was improper because there was no basis for venue in Harris County. (CR 17).

On December 11, 2014, Appellee Garcia filed a motion to transfer venue and argued that venue was improper in Harris County. Other Appellees followed suit but ultimately agreed upon Webb County (Sergio Lopez's county of residence) as the place for transfer. (CR 69-86, 126-28, 133-36). As Appellant failed to assert any venue facts in support of Harris County and Appellees were in agreement that the case should be transferred to Webb County, the Honorable William Burke, Presiding Judge of the 189th Judicial District Court, Harris County, Texas granted Garcia's motion to transfer venue on January 30, 2015 and the case was transferred to Webb County, Texas. (CR 17).

### D. Appellant's domestication case is opened in Webb County and Appellees file motions to vacate the proffered judgment.

Appellant's domestication action in a county of proper venue was initiated in the Webb County District Court when it was received and docketed on February 25, 2015. (CR 14-15, 19, 20-55) (file-stamps indicating receipt by Webb County District Clerk on February 25, 2015). Within thirty days thereafter, Appellees Garcia and Mendoza filed motions to vacate the Proffered Judgment. (CRI 286-93, 443-507). Appellee Mendoza amended his Motion to Vacate on March 27, 2015 and supplemented the motion to vacate on May 4, 2015. (CRII 710). In these

8

motions to vacate (as amended and supplemented, the "Motions to Vacate"), Appellees argued that the Proffered Judgment was not entitled to full faith and credit and should be vacated because, among other things, (i) it was void under federal law for lack of due process to Mendoza and (ii) being void as to Mendoza, it was also void or, at best, interlocutory (and still unenforceable) as to the other Appellees (including Garcia).[1]

In support of their argument that the Proffered Judgment was void as to Mendoza, Mendoza and Garcia pointed to the certificates of service for Appellant's MSJ Documents – all of which lacked any indication that the MSJ, the Notice of Submission, or any of the other MSJ Documents had been served on any of the Appellees. (CRI 468, 478, 485 & 487). The Motions to Vacate were set for hearing on April 29, 2015 and were then re-set for May 7, 2015. (CRI 10).

**E.  Appellant requests that the Louisiana Court enjoin Appellees from seeking vacatur of the Proffered Judgment, but the Louisiana Court refuses to issue the requested injunction.**

Twelve days prior to the first scheduled hearing on the Motions to Vacate, Appellant filed with the Louisiana Court a motion for preliminary injunction. (CRII 908-915); *see also Rettig v. Bruno*, Civil Action No. 2:14-cv-00996-LMA-SS, Document No. 50 (April 17, 2015). Appellant argued that Appellees, "particularly Patrick Mendoza," should be enjoined from "attempting to vacate th[e

---

[1] Mendoza also argued that he had not been properly served with process.

Proffered Judgment] through collateral attack in the Webb County District Court in Laredo, Texas." *See id.* (Document No. 50-3), at 1.

On April 29, 2015, the Louisiana Court denied Appellant's motion for preliminary injunction as prohibited by the Anti-Injunction Act. (CRII 912). The Louisiana Court noted that "the validity of the judgment had not been squarely presented to the [Louisiana] Court as a disputed issue" and the Louisiana Court had not previously decided the question of whether the judgment was void as to Mendoza because of lack of due process. (CRII 911 & 914).

**F.     Appellees submit to the Webb County Trial Court sworn declarations to support their Motions to Vacate.**

In addition to the documents submitted with the earlier-filed Motions to Vacate (which showed that Mendoza had not been served with the MSJ Documents at his last known address), once the Louisiana Court denied Appellant's motion for preliminary injunction, Appellee Mendoza supplemented his Motion to Vacate with documents from the recent Louisiana Court post-judgment proceedings. (CRII 710-915). In particular, the supplementation included the Declarations of Adriana Midkiff and Patrick Mendoza (together, the "Declarations") which were offered in the Louisiana Court proceeding both to oppose the motion for preliminary injunction and to support Mendoza's Federal Rule of Civil Procedure 60(b) motion for relief from the judgment. (CRII 865-867).

**1. Patrick Mendoza testifies that he did not receive the MSJ Documents by mail or, to his knowledge, by any other means.**

In Mendoza's Declaration, Mendoza testified under penalty of perjury that Midkiff was not his attorney, that he did not receive the MSJ Documents at his physical address, that he sold and transferred his equity position in Nogal during the month the MSJ was filed, and that he did not recall receiving any MSJ Documents at the Nogal email address, to which he has no access. (CRII 867).

**2. Adriana Midkiff testifies that she did not represent Mendoza.**

In Midkiff's Declaration, Midkiff testified that she did not represent Mendoza, who was *adverse* to her client, Nogal. (CRII 865). Midkiff further testified that she "never orally or in writing informed any attorney for Jack Rettig that [she] represented Mendoza." *Id.*

**G. In response to the Motions to Vacate, Appellant submits an affidavit of his attorney, to which various emails are attached.**

In opposing the Motions to Vacate, Appellant claimed that Mendoza had notice of the MSJ because Midkiff was Mendoza's attorney and she had received the MSJ Documents. Appellant failed to present any evidence showing that Midkiff represented Mendoza.[2] (CRII 1005-1008). Appellee, on the other hand, submitted

---

[2] Appellant presented three emails in support of his claim that Midkiff represented Mendoza, but none of the emails supports the claim. First, the document at CRII 1005-06 purportedly shows an email from Midkiff to Chris Ralston (an attorney for Appellant). In this email, Midkiff provides her email address, thanks Ralston for talking with her and says she hopes they can work "this" out as amicably as possible. *Id.* There is no mention of any particular case and there is no identification of any particular client. *Id.*

the Declaration of Midkiff wherein she testified, unequivocally, that she never represented Mendoza and never indicated otherwise to Appellant's attorneys. (CRII 865). Her affidavit is uncontroverted.

Alternatively, Appellant argued that, regardless of whether Midkiff actually represented Mendoza, she was served with the MSJ Documents, which Appellant alleges that she then forwarded to Pat.Mendoza@nogalenergyllc.com and, therefore, Mendoza had notice of the MSJ – even if he did not receive them by mail. (RR 55:2-12). In support of this claim, he offered a string of emails dated April 8-9, 2015 (CRII 1002-1004, 1007) (the "Email String").

The Email String purports to show an initial email from Andrew Kingsley to Midkiff on August 19, 2014 (the "Kingsley/Midkiff Email") wherein Kingsley tells Midkiff that he "underst[ood] that [Midkiff had] been in contact with Chris Ralston in regard to the *Rettig v. Bruno* matter" and notes that Ralston asked him to forward

---

The second document, CRII 1007, purportedly shows an email from Andrew Kingsley to Midkiff. But it does not reflect any understanding by Kingsley or any representation by Midkiff that Midkiff represented Mendoza. CRII 1007.

Finally, the email at CRII 1008 purportedly shows Midkiff's reply to an incomplete email from "Eric." The Midkiff reply contains the subject line "Re: TIME SENSITIVE – Nogal Energy LLC Commercial Property and Equipment Leases," and includes Midkiff's unelaborated statement that she is "no longer counsel to Nogal or any of its principles [sic]." *Id.* The names of any principals that she may have represented at one time (presumably in connection with "commercial property and equipment leases") are not indicated. *Id.* The original email content which provides the context for Midkiff's response was deleted from the document provided to the Trial Court. *Id.*

to her a copy of the "attached motion for summary judgment." (CRII 1004 & 1007). **The Kingsley/Midkiff Email does not reflect that any purported attachments were actually included with the Kingsley/Midkiff Email**. *Id.* C.M. Henkel, III ("Henkel"), the affiant to whose affidavit the Email String is attached, was not a party to the Kingsley/Midkiff Email. *Id.*

The Email String reflects that, on April 8, 2015, Andrew Kingsley forwarded the Kingsley/Midkiff Email to Henkel, who then forwarded it to Midkiff with the message "Here it is." (CRII 1003). Midkiff stated in a reply email that she had been able to locate "the email" and had forwarded it on August 19, 2014 to eight email addresses, including "Pat.Mendoza@nogalenergyllc.com." (CRII 1002). She did not indicate whether she had received the MSJ Documents, whether she had forwarded the MSJ Documents to the identified email addresses, or whether she knew whether any email or documents had actually been received by Mendoza at the nogalenergy.com email address. *Id.*

## H. The Webb County District Judge conducted a hearing on the Motions to Vacate, stated that she would consider all documents in the record prior to ruling, and, thereafter, granted the motions to vacate.

The Trial Court conducted a hearing on the Motions to Vacate on May 7, 2015. (CRI 11; RR 1-72). During the hearing, Appellant repeatedly suggested that there was no evidence in the record from which the Trial Court could make findings necessary to vacate the Proffered Judgment. (RR 17:17, 64:6-7, 66:2-3, 68:15-16).

13

This was not true as the Declarations were in the record at the time. (CRII 865-67). However, "in an abundance of caution," Mendoza's counsel formally moved for the admission into evidence of the Declarations (RR 68:17-20). In response, Appellant stated, "Your Honor, I don't mean to complicate things, Your Honor, but it does not give me an opportunity to cross-examine, Your Honor, and --." (RR 68:21-24). Assuming that this actually constituted an objection to the submission of affidavits (rather than live testimony), the Trial Court overruled it. (RR 68:25, 69:2, 69:8-9, 69:15-16, & 69:19-20). Although Mendoza's counsel argued that the Email String offered by Appellant was incompetent evidence, the Trial Court said that she would consider all documents in the record before her. (RR 55:21-56:15; 69:10-14).

Following the hearing, the Trial Court granted the Motions to Vacate and entered the May 8, 2015 and May 11, 2015 orders that are the subject of this appeal. (CRII 1043-44, 1051-56 [App. A]).

## SUMMARY OF ARGUMENT

The Trial Court's decision to vacate the Proffered Judgment must be upheld because the Trial Court entered its orders prior to the expiration of its plenary power and found, within the proper exercise of its discretion, that the Louisiana Judgment was void for lack of due process to Mendoza. Moreover, having properly found that the Louisiana Judgment was void, the Trial Court properly vacated the Proffered Judgment in its entirety.

14

First, the Trial Court acted within its plenary power. The Motions to Vacate were timely filed within thirty (30) days of the first proper filing of Appellant's domestication action and the Trial Court entered a ruling prior to the date on which the Motions to Vacate would have been overruled by operation of law.

Second, the Trial Court's decision to vacate the Proffered Judgment was not an abuse of discretion. It was fully within the Trial Court's proper exercise of discretion to admit sworn declarations submitted by Mendoza and Midkiff, weigh all documentary evidence submitted by Appellant and Appellees, and conclude that the Appellees had proven by clear and convincing evidence that the Louisiana Judgment was void as to Mendoza because he did not receive notice of the MSJ which led to the Proffered Judgment.

Finally, because the Louisiana Judgment was void as to Mendoza, the Trial Court properly vacated the Proffered Judgment in its entirety – as to all judgment defendants. Alternatively, the Proffered Judgment, if not finally vacated as to all Appellees is, at best, interlocutory and, therefore, unenforceable as to the remaining Appellees in any event.

## **ARGUMENT**

I. **The Trial Court's plenary power had not expired when it granted Mendoza's and Garcia's post-judgment motions and vacated the Proffered Judgment.**

Because (a) Appellees filed Motions to Vacate within thirty (30) days after

15

the initiation of Appellant's domestication action in a county of proper venue and (b) the Trial Court granted the Motions to Vacate and entered orders vacating the Proffered Judgment before the Motions to Vacate were overruled by operation of law, the Trial Court acted within its plenary power.

**A.     When a foreign judgment is filed in an action brought under the UEFJA, it is simultaneously both a Texas petition and a Texas judgment.**

The filing of a foreign judgment under the UEFJA comprises both the plaintiff's original petition and the final judgment. *Walnut Equip. Leasing Co., Inc. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996); *see also Bahr v. Kohr*, 928 S.W.2d 98, 100 (Tex. App. – San Antonio 1996, writ denied) (filing a foreign judgment under the UEFJA has the effect of initiating an enforcement proceeding and rendering a final Texas judgment simultaneously).

**B.     The general venue rules apply to UEFJA actions to domesticate foreign judgments.**

Because the filing of the foreign judgment operates as a Texas *petition,* the general venue laws of Texas apply to actions to domesticate foreign judgments. *See Cantu v. Howard S. Grossman, P.A.*, 251 S.W.3d 731, 740-41 & n.8 (Tex. App. – Houston [14th Dist.] 2008, pet. denied) (noting that every state that has ruled on the question of venue in the context of judgment domestication proceedings has held that general state venue statutes apply and citing decisions in Oklahoma, Georgia, Florida, Alabama, and Kansas). As explained by the *Cantu* court, foreign judgment

16

holders are not permitted to proceed under the UEFJA in any Texas county of their choosing as this would "deprive the debtor of the opportunity he would otherwise possess to challenge the creditor's choice of venue." *Id.* at 736-37 ("the UEFJA is not intended to give holders of foreign judgments greater rights than holders of domestic judgments" and the UEFJA should be interpreted "in a manner that does not alter the substantive rights afforded by Texas venue statutes to Texas defendants"). Therefore, when a judgment creditor files a UEFJA action in a county of improper venue, the trial court must transfer the case, upon a defendant's motion, to a proper county under TEX. CIV. PRAC. & REM. CODE § 15.002(a)(2). *See id.* at 741 (reversing district court's denial of motion to transfer venue and remanding case with orders that it be transferred to the county of the judgment defendant's residence).

**C.    The post-judgment deadlines apply to domesticated judgments but they do not begin to run until the foreign judgment is properly filed in a proper venue.**

Because the filing of the foreign judgment also operates as the entry of a Texas *judgment,* the Texas Rule of Civil Procedure 329b deadlines apply. Specifically, a foreign judgment becomes enforceable as a Texas judgment on the date it is filed and is subject to the same defenses and proceedings for reopening, vacating, or staying a judgment as a judgment of a Texas court. *See* TEX. CIV. PRAC. & REM. CODE § 35.003(c); *see also Karstetter v. Voss*, 184 S.W.3d 396, 401 (Tex. App. –

17

Dallas 2006, no pet.).   In short, a motion contesting enforcement of a foreign judgment operates as a motion for new trial, *Karstetter,* 184 S.W.3d at 402, and, like a motion for new trial, a motion to vacate a domesticated judgment must be filed within 30 days after the judgment is entered in order to extend the trial court's plenary power.  *See* Tex. R. Civ. P. 329b.

Appellant filed the Proffered Judgment in Harris County (a county of improper venue) on October 3, 2014.  Because Appellees did not file their Motions to Vacate with the Trial Court until March 2015, Appellant argues that the Trial Court lost its plenary power prior to its May 8, 2015 and May 11, 2015 orders vacating the Proffered Judgment.   Appellant's argument is based on a faulty assumption that the transfer of venue in a UEFJA action would have no effect on the proffered judgment.  But none of the cases cited by Appellant are on point.  Rather, all of the cases cited by Appellant involve ordinary, pre-judgment transfers of venue in cases originally filed in Texas.  They have no application to domestication actions filed under the UEFJA – which operate not only as *petitions* but as *judgments.*

The distinction between a pre-judgment transfer of venue and a post-judgment transfer of venue is critical because when a trial court improperly denies a motion to transfer venue and then enters a judgment against the party who moved for transfer, the trial court commits reversible error and the judgment must be reversed.  *See* Tex. Civ. Prac. & Rem. Code § 15.064(b) ("[I]f venue was improper it shall in no event

18

be harmless error and shall be reversible error."); *see also Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex. 1993) (if venue was improper in the county where judgment was rendered, "the error cannot be harmless, according to the statute," and "the judgment must be reversed and the case remanded to the trial court"); *Fincher v. Wright*, 141 S.W.3d 255, 262 (Tex. App. – Fort Worth 2004, no pet.) ("improper venue is automatically reversible error"); *West ex rel. Clark v. Taylor*, No. 04-04-00119-CV, 2004 WL 2715396, at \*2 (Tex. App. – San Antonio Dec. 1, 2004, no pet.) (noting that "[a]llowing trial in an improper venue is always reversible error," reversing a trial court's judgment and remanding with instructions to transfer the case to a proper venue for a new trial).

The law in UEFJA cases is clear that post-judgment motions deadlines do not begin to run until the foreign judgment is *properly* filed. *See Jack H. Brown & Co. v. Northwest Sign Co.*, 665 S.W.2d 219, 222 (Tex. Civ. App. – Dallas 1984, no writ) (if a judgment creditor fails to comply with the UEFJA requirements when filing the foreign judgment, the filing does not trigger post-trial deadlines; rather, the deadlines run from the date the foreign judgment is first properly filed). Because the domestication of a foreign judgment in Texas constitutes a Texas judgment and judgments granted by Texas courts with improper venue are automatically reversed, the post-trial motions deadline is not applicable to a domesticated judgment filed in violation of the venue rules.

The *Cantu* court faced exactly the situation posed by the instant case. 251 S.W.3d at 741-42. In *Cantu*, the judgment creditor filed a UEFJA action to domesticate a Florida judgment in Harris County, though there were no facts to support venue in Harris County. *Id.* at 741. The trial court denied the defendant's motion to transfer venue and also denied the defendant's motion to vacate the foreign judgment. *Id.* at 734. On appeal, the court of appeals reversed the trial court's order denying the motion to transfer venue and remanded with instructions to transfer the case to Hidalgo County. *Id.* at 742. **Significantly, the appellate court noted that, based on its reversal for improper venue, it did not need to reach the question of whether the motion to vacate was also improperly denied.** *Id.* This is because the transfer to a county of proper venue restarted the clock on the plenary power of the trial court with proper venue. Any ruling to the contrary would have eviscerated the court's holding that a judgment creditor is required to file a domestication action in a county of proper venue. After all, if a judgment creditor could domesticate in a county of improper venue and then hold defendants to a timetable based on that improper filing (which timetable is in conflict with the timetable applicable to motions to transfer venue)[3], judgment defendants would remain at the mercy of the

---

[3] While post-trial motions must be filed within 30 days after entry of the judgment, *see* T.R.C.P. 329b(a) and must be heard prior to being overruled by operation of law after the expiration of 75 days after entry of judgment, *see* T.R.C.P. 329b(c), venue motions must be filed prior to or concurrently with any other pleading, *see* T.R.C.P. 86, and cannot be set for hearing (without leave of court) until at least 45 days have elapsed since the filing of the motion to transfer. *See* T.R.C.P. 87.

judgment creditor's improper venue choice.

**D.    Because Garcia and Mendoza filed their Motions to Vacate within thirty days after the case was first docketed by the Webb County District Clerk, the Motions to Vacate were timely and the Trial Court's plenary power did not expire prior to issuance of the orders vacating the judgment.**

Under *Cantu,* the judgment "entered" (by Appellant's UEFJA filing) in Harris County became a nullity once the impropriety of venue was determined by the Harris County Court. The transfer of the case to the Webb County Trial Court was, in effect, a re-filing under the UEFJA that re-started the clock on Appellees' deadlines to file post-judgment motions. There is no other way to reconcile the holdings of *Cantu* with Tex. Civ. Prac. & Rem. Code § 15.064(b), which requires automatic reversal of judgments rendered by courts with improper venue. Accordingly, it was the docketing of Appellant's UEFJA action in Webb County on February 25, 2015 that triggered the 30-day window within which Appellees could file motions to vacate. Appellees' motions to vacate (filed on or before March 27, 2015)[4] were, therefore, timely and were granted on May 8, 2015 and May 11, 2015 (a) before being overruled by operation of law on May 12, 2015 and (b) while the Trial Court retained its plenary power.

---

[4] Mendoza's motion to vacate was filed on March 6, 2015 and was amended on March 27, 2015. (CRI 286-410, CRII 560-597). He filed a supplement to his motion to vacate after the 30-day deadline (CRII 710-915), but a trial court has discretion under its inherent authority to consider grounds raised in an untimely supplemental motion before it loses plenary power. *See Mindis Metals Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 486, n.9 (Tex. App. – Houston [14th Dist.] 2004, pet. denied) (citing *Moritz v. Preiss,* 121 S.W.3d 715, 720-21 (Tex. 2003)).

**II.    The Trial Court did not abuse its discretion in finding that Garcia and Mendoza had shown, by clear and convincing evidence, that the Proffered Judgment was not entitled to full faith and credit.**

Because it is an undisputed fact that Mendoza was not served with the MSJ Documents at his last known address in accordance with federal law, and there is no competent evidence that he was served or had adequate notice by any other means, the Trial Court properly found that there was clear and convincing evidence that Mendoza did not have notice and opportunity to respond to the MSJ, and, therefore, that the Louisiana Judgment is void under federal law.  Because the Trial Court has discretion only to enforce or vacate a judgment for domestication in Texas, the Trial Court properly vacated the Proffered Judgment in its entirety – as to all Appellees. Alternatively, the Trial Court's vacatur of the Proffered Judgment as to Garcia was proper because it was interlocutory.

**A.    A trial court may vacate a foreign judgment proffered for domestication when, in the exercise of its discretion, it weighs the competent evidence under a clear and convincing evidence standard, and finds that the foreign judgment is non-final or void for lack of jurisdiction or due process.**

**1.    Foreign judgments are entitled to full faith and credit unless there is clear and convincing evidence to the contrary.**

The United States Constitution requires that full faith and credit be given in each state to the public acts, records, and judicial proceedings of every other state. U.S. CONST. art. IV, § 1.  Under this principle, Texas is required to enforce a valid judgment from another state. *Mindis Metals Inc. v. Oilfield Motor & Control, Inc.*,

22

132 S.W.3d 477, 484 (Tex. App. – Houston [14th Dist.] 2004, pet. denied) (citing

*Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex. 1992)).  The

party seeking to enforce a foreign judgment has the initial burden to present a

judgment that appears on its face to be a final, valid, and subsisting judgment.  *See*

*Mindis*, 132 S.W.3d at 484 (citing *Russo v. Dear*, 105 S.W.3d 43, 46 (Tex. App. –

Dallas 2003, pet. denied)); *see also Counsel Financial Services, L.L.C. v. David*

*McQuade Leibowitz, P.C.*, 311 S.W.3d 45, 51 (Tex. App – San Antonio 2010, pet.

denied)).

When a judgment creditor files an authenticated copy of a foreign judgment

pursuant to the UEFJA, a prima facie case for its enforcement is presented.  *Mindis*,

132 S.W.3d at 484 (citing cases).  The burden then shifts to the judgment debtor to

prove that the foreign judgment should not be given full faith and credit.  *Id.* (citing

cases); *Counsel Financial*, 311 S.W.3d at 50.  The presumption of validity can only

be overcome by clear and convincing evidence to the contrary.  *Mindis*, 132 S.W.3d

at 484.  The laws of the state rendering the judgment determine its validity.  *Id.*

(citing *Bard*, 839 S.W.2d at 794).

> **2.** **Where a Texas trial court finds that a foreign judgment is non-final or void under the law of the rendering state, the foreign judgment is not entitled to "full faith and credit" and the Texas trial court may vacate the judgment proffered for domestication in Texas.**

The following are among the "well-established" exceptions to full faith and

credit: (1) the rendering court did not have jurisdiction, (2) the proffered judgment is subject to modification under the law of the rendering state, and (3) the proffered judgment is interlocutory rather than final. *See Counsel Financial*, 311 S.W.3d at 50; *Mindis*, 132 S.W.3d at 484 (citing *Bard*, 839 S.W.2d at 794 and *Brown's Inc. v. Modern Welding Co.*, 54 S.W.3d 450 (Tex. App. – Corpus Christi 2001, no pet.)). A defendant may challenge the jurisdiction of the rendering court by demonstrating that (1) service of process was inadequate under the rules of the rendering jurisdiction or (2) the rendering court's exercise of personal jurisdiction offends the due process of law. *Cash Register Sales & Serv. Of Houston, Inc. v. Copelco Capital, Inc.,* 62 S.W.3d 278, 281 (Tex. App. – Houston [1st Dist.] 2001, no pet.). If a "Texas court finds that a foreign court lacked jurisdiction over the parties or property because it did not allow the defendant to appear, present his or her case, or be fully heard, then the judgment must be ruled null and void." *Playnation Play Systems v. Guajardo,* No. 13-06-00302-CV, 2007 WL 1439740, at *3 (Tex. App. – Corpus Christi 2007, no pet.).

### 3. A judgment is void under federal law if it is subject to being set aside under Federal Rule of Civil Procedure 60(b).

Federal Rule of Civil Procedure 60(b) provides grounds for relief from a final judgment or order (a) where there has been mistake, inadvertence, surprise, or excusable neglect, (b) **where the judgment is void** or (c) for any other reason that justifies relief. Although Rule 60(b) motions based upon mistake, inadvertence,

24

surprise or excusable neglect are timely only if made within one year after entry of the judgment, *see* Rule 60(c), Rule 60(b) motions based upon a void judgment are not subject to any time limitation. *See id.*; *see also New York Life Ins. Co. v. Brown,* 84 F.3d 137, 142-43 (5th Cir. 1996). A judgment is "void" if the rendering court lacked personal jurisdiction **or if the court "acted in a manner inconsistent with due process of law**." *Id.* at 143 (emphasis added).

Notice and an opportunity to respond are the essential requirements of due process. *See Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003). Due process requires that defendants be served with motions for summary judgment and notices of submission concerning those motions. *See* FED. R. CIV. P. 5(a)(1) (all motions and notices must be served upon *every* party); *see also* Eastern District of Louisiana Local Rule 5.4 ("every document filed after the initial complaint must bear a certificate by the attorney or party who files it that, contemporaneously with or before filing, copies have been served on all parties or their attorneys").

Appellant conceded in his briefing to the Trial Court that "under Federal Rule of Civil Procedure 5, service of a mid-litigation document on a party should be through his counsel, otherwise, if no counsel exists, service is accomplished *simply by making it to the person's last known address*." (CRII 933) (emphasis added) (citing FED. R. CIV. P. 5(b)(1), (2)(C)). Under federal law (*i.e.,* the law of the rendering state), where a judgment is granted against a defendant without notice of

the motion for summary judgment, the defendant has been denied due process and the judgment is void. *See New York Life Ins.,* 84 F.3d at 143 ("without notice of an impending grant of summary judgment, a defendant has no opportunity to be heard" and the district court lacks discretion to do anything but vacate the judgment under Rule 60(b)(4)).

As recognized by the Local Rules for the Eastern District of Louisiana, the "opportunity to be heard" that due process requires includes an adequate opportunity to oppose a motion for summary judgment. Specifically, the applicable local rules require that a defendant have at least fifteen days' of "actual notice" prior to the date that a motion for summary judgment is submitted to the court for ruling. (CRI 501) (Local Rule 7.2).

### 4. A trial court's order vacating a foreign judgment is reviewed for an abuse of discretion.

Similar to the standard of review applicable to a trial court's ruling on a motion for new trial, an order granting a motion to vacate a foreign judgment is reviewed for abuse of discretion. *See Mindis*, 132 S.W.3d at 485 (citing *Moncrief v. Harvey*, 805 S.W.2d 20, 23 (Tex. App. – Dallas 1991, no writ)). "A trial court has broad discretion in ruling on such a motion, and [an appellate court] may not disturb its ruling absent manifest abuse of discretion." *In re Guardianship of Parker*, 329 S.W.3d 97, 100 (Tex. App. – Amarillo 2010, pet. denied) (citing *Karstetter*, 184 S.W.3d at 401). A trial court has no "discretion" to improperly determine the law or

misapply the law to the facts, *see id.*, but whether a judgment debtor can prove an exception to full faith and credit generally involves a *factual* inquiry. *See Reading & Bates Const. Co. v. Baker Energy Resources Corp.*, 976 S.W.2d 702, 713 (Tex. App. – Houston [1st Dist.] 1998, pet. denied) ("These [full faith and credit] exceptions are fact inquiries, not questions of law."). "And if the trial court does not sign findings of fact and conclusions of law, all facts supported by the evidence and necessary to the trial court's rulings are implied in favor of the trial court's ruling." *Peters v. Top Gun Executive Group,* 396 S.W.3d 57, 61 (Tex. App. – Houston [14th Dist.] 2013, no pet.).

When the standard of proof is clear and convincing evidence, appellate courts "must review the evidence in the light most favorable to the trial court's finding to determine 'whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *Id.* at 61-62 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). An appellate court "will disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible, but generally [an appellate court does] not disregard undisputed facts." *Peters*, 396 S.W.3d at 62; *see Karstetter*, 184 S.W.3d at 402 ("A trial court has broad discretion and we may not disturb its ruling absent manifest abuse of discretion.") (citing *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex. 1988)). "The test for abuse of discretion is whether the trial court acted without

reference to any guiding rules or principles or whether the trial court's actions were arbitrary or unreasonable under the circumstances." *Karstetter*, 184 S.W.3d at 402; *see also In re Guardianship of Parker*, 329 S.W.3d at 100. A trial court that grants a motion to vacate a foreign judgment before the expiration of its plenary power has discretion to consider the contents of a supplemental motion to vacate even if such supplement is filed more than thirty days after the entry of judgment. *See Mindis*, 132 S.W.3d at n.9 (citing *Moritz v. Preiss,* 121 S.W.3d 715, 720-21 (Tex. 2003)).

**5.**      **In determining whether an Appellee has met his burden to show clear and convincing evidence, a trial court may consider testimony by affidavit.**

Appellant complains about the affidavits submitted to the trial court by Appellees but has cited no authority for the proposition that Appellees were required to present live witnesses at an evidentiary hearing in order to meet their burden to show clear and convincing evidence. Rather, it is common and proper to submit evidence in support of a motion to vacate by affidavit. *See, for example, Peters,* 396 S.W.3d at 64-65 (affidavit in support of motion to vacate); *Cash Register Sales*, 62 S.W.3d at 281 (affidavits in support of and in opposition to motion to vacate); *Brown's,* 54 S.W.3d at 454 (affirming vacatur of judgment based on affidavit testimony).

Affidavits attached to a motion for new trial do not have to be separately "offered into evidence." *Director, State Employees Workers' Compensation*

*Division v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *see also Onyeanu v. Rivertree Apartments*, 920 S.W.2d 397, 398 (Tex. App. – Houston [1st Dist.] 1996, no writ) (same). Rather, "[i]t is sufficient that the affidavits are attached to the motion for new trial and are part of the record." *Evans*, 889 S.W.2d at 268. Moreover, if the affidavit is uncontroverted, it must be taken as true. *Onyeanu v. Rivertree Apartments*, 920 S.W.2d at 398.

> **6.** **In determining whether an Appellee has met his burden to show clear and convincing evidence, a trial court may disregard incompetent evidence submitted by Appellant, even if Appellee did not object to its admissibility.**

In reviewing a case tried before the court, the court of appeals generally assumes the trial court disregarded any incompetent evidence. *Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex. 1982). The lower court's judgment must be upheld "where competent evidence exists which supports the judgment." *In re Interest of AV*, 849 S.W.2d 393, 402 (Tex. App. – Fort Worth 1993, no writ). Evidence that is before the court because no objection was made to its admission may, nevertheless, be incompetent evidence. *Id.* at 398-99; *see also Lee v. Dykes*, 312 S.W.3d 191, 198 (Tex. App. – Houston [14th Dist.] 2010, no pet.) (inadmissible evidence is not necessarily probative simply because it is admitted without objection) (citing *Porras v. Craig*, 675 S.W.2d 503, 505 (failure to object to inadmissible evidence was not material because "[i]rrelevant evidence, even when admitted without objection, will not support a judgment").

### a. Hearsay is not competent, relevant evidence merely because it was admitted without objection.

With regard to hearsay evidence that is admitted without objection, case law is clear that such evidence is not necessarily probative; rather, the probative value of "unobjected-to hearsay evidence" is considered by the fact finder along with the other evidence. *See Lee v. State*, 29 S.W.3d 570, 578 (Tex. App. – Dallas 2000, no pet.) (the rule permitting inadmissible hearsay to have probative value if it is admitted without objection does not *bestow* probative value on the evidence merely because it was hearsay admitted without objection). It is a "well-settled rule" that a judge sitting without a jury can provisionally admit evidence "and it is then presumed on appeal that the judge disregarded any incompetent evidence in reaching a judgment." *Helms v. Texas Alcoholic Beverage Comm.*, 700 S.W.2d 607, 615 (Tex. App. – Corpus Christi 1985, no writ) (citing *Gillespie*, 644 S.W.2d at 450 (Tex. 1982)).

### b. A trial court can conclude that unobjected-to hearsay is without probative value when evaluating evidence under a clear and convincing standard.

Where a trial court is evaluating evidence under a clear and convincing standard, a trial court may disregard incompetent evidence even if such "evidence" has been admitted without objection. *See In re AV*, 849 S.W.2d at 396-399. For example, in *In re AV,* the appellee had put into evidence (through attachment to a Child Protective Services case file) a scientific report concerning the results of a

dubious test but failed to establish the reliability of the test. *Id.* at 395 & 399. Because the appellant did not object to the inclusion of the report in the record, the court of appeals found that the report was properly admitted into evidence and that the trial court did not err in overruling appellant's objection to subsequent testimony regarding the results from the dubious test. *Id.* at 396 & 398. However, the court made clear that the fact that the report and testimony were admissible did not establish that they had any evidentiary value. *Id.* at 398 (explaining that although appellant's failure to object made the report and the testimony *admissible*, appellee's failure to establish the reliability of the evidence affected the *weight* of the evidence). Indeed, the court of appeals, in reviewing the sufficiency of the evidence, placed *no weight* on any of the evidence concerning the dubious and likely unreliable test. *Id.* at 399.

### c. The trial court, as fact-finder, can determine that emails are not authentic even if they have been admitted into evidence.

Evidence has no relevance or probative value if it is not "authentically what its proponent claims it to be." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. – 2012). Rules of evidence regarding admissibility perform a *gatekeeping* function, but "[t]he *ultimate* question whether an item of evidence is what its proponent claims [is] a question for the fact-finder . . . ." *Id.* at 638-639 (emphasis added) (the fact-finder makes the "ultimate determination" of authenticity after a

31

trial court admits documents into evidence on the basis of a "prima facie" showing of authentication).

Printouts of emails have been properly admitted into evidence "when found to be sufficiently linked to the purported author so as to justify submission to the [factfinder]," but the fact "[t]hat an email on its face purports to come from a certain person's email address . . ., without more, has typically been regarded as insufficient to support a finding of authenticity." *Id.* at 639-640. "For authentication by a witness with knowledge of an [email], a witness qualifies as having knowledge when *they participated* in an exchange of messages and can testify to an exhibit's fair and accurate depiction of the message exchange." *Pena v. State*, 467 S.W.3d 71, 75 (Tex. App. – San Antonio 2015, no pet.) (emphasis added) (citing *Ussery v. State*, No. 03-07-00116-CR, 2008 WL 269439, at *7 (Tex. App. – Austin Jan. 30, 2008, pet. ref'd) (mem. op., not designated for publication) (stating that witness's testimony that exhibits were "fair and accurate copies" of message *she* had exchanged with defendant was sufficient to authenticate the emails)).

> **7. Where a foreign judgment defendant shows that he was not served with a mid-litigation motion that leads to the judgment proffered for domestication, it is proper for a trial court to vacate the proffered judgment as void.**

Where the law of the rendering state requires service on the defendant and the defendant shows that he was not served in compliance with such law, a Texas trial court may grant his motion to vacate. For example, in *Brown's*, the trial court was

32

justified in vacating the domestication of a Washington judgment because the appellee had not been personally served with a motion to confirm an arbitration award and Washington law required personal service. 54 S.W.3d at 456.

Likewise, a sister state has concluded that a foreign judgment cannot be given full faith and credit under the UEFJA where a pro se judgment defendant offers uncontroverted evidence that he was not actually served with a motion for summary judgment, the granting of which resulted in the judgment proffered for domestication. *See Bavishi v. Aladabbagh,* 2009 WL 5149934, at *1-3 (N.J. Super. Ct. App. Div. Dec. 31, 2009) (evidence showed that FedEx had delivered the motion to the wrong address). As the court was unable to conclude that the judgment defendant was given notice and an opportunity to respond, the court found that the "notice requirement implicit in the UEFJA ha[d] not been met" and vacated the domesticated foreign judgment. *Id.* at *3.

**8. Where a foreign judgment is void as to one defendant and an order is entered to vacate the judgment proffered for domestication in Texas, the order is final as to all parties to the UEFJA action and accomplishes a vacatur of the judgment as to all defendants.**

Where a judgment creditor attempts to domesticate a foreign judgment against several defendants, jointly and severally, and the trial court rules that the foreign judgment is not enforceable in Texas on the motion of only one judgment defendant, the order vacates the judgment as to *all* of the judgment defendants. *See Mindis,* 132

S.W.3d at 483. In finding that such an order was final and appealable (rather than subject to review only on mandamus), the *Mindis* court explained that "[o]nce the trial court ruled that the [foreign] judgment was not enforceable in Texas, it terminated the outstanding claims and rights of *all parties to the UEFJA proceeding*, and there remained nothing for it to adjudicate." *Id.* (emphasis added); *see also Corporate Leasing Int'l, Inc. v. Bridewell*, 896 S.W.2d 419, 422 (Tex. App. – Waco 1995, no writ) (when a collateral attack is made on a foreign judgment filed in Texas, the trial court has "only two alternatives": it can enforce the judgment or, if proper evidence is before it, declare it void).

> **B.  The Trial Court did not abuse its discretion in finding that Appellees had met their burden to show that the foreign judgment was void as to Mendoza.**

It is an undisputed fact that Appellant did not serve Mendoza with the MSJ Documents by mail to his last known address in accordance with federal law. Appellant argues that Mendoza received notice and opportunity to respond by other means but has offered only hearsay and unauthenticated emails in support of his claim. These emails, admitted into evidence by the Trial Court without objection, were, nonetheless, incompetent evidence that did not actually have any probative value on the question of whether Mendoza received notice. Appellant's argument that Mendoza received notice, *after the MSJ was granted*, is equally unavailing because only eight (8) days elapsed between the order and the final judgment and

34

the orders sent to Mendoza by the Louisiana Court were unclear and contradictory.

> **1.** **The Appellees submitted competent and uncontroverted evidence showing that Mendoza was not served at his last known address, in violation of the Federal Rules of Civil Procedure and the Local Rules for the Eastern District of Louisiana.**

In support of the Motions to Vacate, Appellees submitted competent and uncontroverted evidence showing that Mendoza was not served in accordance with federal law. (CRII 865-67). Although Federal Rule of Civil Procedure 5 requires that all mid-litigation documents be served upon pro se parties by mail to their last known addresses and Mendoza's last known address was provided to Appellant in Kelly's Motion to Withdraw (CRI 462), the certificates of service for each of the MSJ Documents show that Mendoza was not served by mail to his last known address. (CRI 468, 478, 485, 487). Mendoza has offered sworn testimony of the same. (CRII 867). Appellant concedes that Federal Rule of Civil Procedure 5 requires service on unrepresented parties by mail to the last known address (CRII 933) and does not dispute that Mendoza was not so served (RR 53:18-20). From this uncontroverted evidence, the Trial Court could properly find clear and convincing evidence that Mendoza was not served with the MSJ Documents as required by federal law.

**2. The Appellees submitted competent and uncontroverted evidence showing that Midkiff was not Mendoza's attorney and service upon Midkiff did not effect service upon Mendoza.**

Although Appellant concedes that Federal Rules require service to Mendoza by mail (CRII 933), Appellant argues that there was no due process violation because Appellant served *Midkiff*, an attorney for Nogal. *See* Appellant's Brief, at 32. While the certificates of service for the MSJ Documents *do* show that service was made upon Midkiff (CRI 468, 478, 485, 487), there is no evidence at all that Midkiff was Mendoza's attorney. To the contrary, the uncontroverted evidence is that Midkiff was Nogal's attorney and Nogal was adverse to Mendoza (CRII 865). Both Midkiff and Mendoza testified to the fact that Midkiff never represented Mendoza. (CRII 865-67). And Midkiff testified further that she never represented otherwise to Appellant's counsel. (CRII 865). Accordingly, service upon Midkiff was wholly ineffective to establish service on Mendoza.

**3. The Appellant failed to submit competent evidence showing that Mendoza had actual notice of the MSJ by other means.**

In a final effort to convince the Trial Court that it was not a violation of due process to obtain a $2.7 million federal judgment against a pro se defendant who was not provided with notice, Appellant argues that (a) even if Midkiff was not Mendoza's attorney, she forwarded the MSJ Documents to Mendoza and, therefore, Mendoza had notice or (b) even if Mendoza did not receive any MSJ Documents at

any time, he received other documents from the Court and should have taken action to prevent entry of a judgment.  *See* Appellant's Brief, at 30-33.

The first argument is unavailing because Appellant has presented no evidence that Midkiff forwarded any MSJ Documents to Mendoza.  Midkiff's email to Henkel, the content of which is blatant hearsay, indicates that she forwarded *an email* to an email address maintained by *Nogal*.  (CR 1002).  The email that she forwarded appears to be the Kingsley/Midkiff Email in the Email String, which does not reflect the attachment of any MSJ Documents.  (CR 1004).[5]  Because the MSJ Documents were not attached to the Kingsley/Midkiff Email, her hearsay statement that she forwarded the Kingsley/Midkiff Email does not constitute evidence (hearsay or otherwise) that she forwarded the *MSJ Documents* to the nogalenergyllc.com address, much less to *Mendoza*.  Because the Email String was, as a whole, nothing but unauthenticated hearsay, the Trial Court could properly disregard it.  But even if the Trial Court considered the Email String, it didn't have probative value on the question of whether Mendoza received the MSJ Documents.

Assuming that Midkiff did send the MSJ Documents to Mendoza in an email (an assumption for which there is *no* evidence), there is still no evidence that the MSJ Documents were *received* by Mendoza.  He has testified that he does not recall

---

[5] Henkel was not a party to the Kingsley/Midkiff Email and, therefore, was in no position to authenticate it.  *See Tienda*, 358 S.W.3d at 638; *see also Pena*, 467 S.W.3d at 75 (a witness can authenticate an email in which he "participated").

seeing them and that he is unable to confirm because he does not have access to the company email address. (CRI 867). His sworn testimony is that he sold his shares in Nogal in August 2014, the same month that the MSJ was filed. *Id.* Prior to the filing of the MSJ, Mendoza had notice of the Motion to Withdraw, which contained his last known address in Boerne, Texas. (CRI 462). He had no duty to anticipate that anyone would attempt to serve him with court documents through other means -- let alone through a Nogal email address that he could not control or access. There is no evidence at all that Mendoza received notice of the MSJ but decided to "lay behind the log." (RR 54:13).

Appellant's second argument – that Mendoza *should have known* about the MSJ – is offensive. The documents that Mendoza received from the Louisiana Court did not put him on notice that entry of a $2.7 million judgment was imminent. Rather, between August 15, 2014 (the date that Kelly moved to withdraw as counsel) and September 30, 2014 (the date that the Louisiana Court entered the Louisiana Judgment), Mendoza received only the following from the Louisiana Court: (a) the Motion to Withdraw indicating that discovery could be conducted until November 2014 and that trial was not set until January 2015, (b) orders extending the time to respond to a "pending motion for summary judgment" but not indicating whether the referenced motion applied to him, (c) the September 22, 2014 order granting summary judgment, and, immediately thereafter, (d) the September 26, 2014 order

38

requiring all parties to attend a settlement conference in late October and make settlement offers to each other prior to that time. The September 30, 2014 Louisiana Judgment must have arrived at Mendoza's address only a few days after the September 26, 2014 order requiring Appellant to make a settlement offer to Mendoza. From this record, it is impossible to conclude that Mendoza was afforded due process.

Contrary to Appellant's argument to this Court, the *Mindis* Court's decision regarding due process is not on point with the facts presented by this case. In *Mindis*, the defendant was actually served at its last known address, which was what was required by Georgia law. 132 S.W.3d at 488 (the fact that the name of the defendant was missing from the certificate of service was not fatal because the defendant "was served with the motion for summary judgment at its last known address according to the court records"). Further, in *Mindis*, a significant period of time (***9 months***) elapsed between the time the summary judgment on liability was granted and the time a final judgment was entered. *Id.* at 489 & n. 16. Indeed, the defendant in *Mindis*, who later complained about inadequate service, had actually employed substitute counsel but still failed to challenge the summary judgment ruling before final judgment was entered. *Id.* at 489. The *Mindis* court found that the *Mindis* defendant was "clearly aware" of the interlocutory summary judgment before final judgment was entered. *Id.* at n. 16.

By contrast, Mendoza was not "clearly aware" that a final judgment was being entered against him. **The total time that elapsed between the order granting summary judgment and the entry of final judgment was only eight (8) days**. To the extent that the September 22, 2014 order granting summary judgment might have provided Mendoza with notice of an action already taken by the Louisiana Court, any sense of urgency was immediately undercut by the Louisiana Court's order requiring Appellant to make a settlement offer to Mendoza in advance of an October 28, 2014 settlement conference. Mendoza could not otherwise have been aware that entry of final judgment was imminent because Appellant moved for entry of the judgment on an *ex parte* basis and, again, failed to serve Mendoza.

The documents that Mendoza *needed* to have in order to know what was happening with respect to the claims against him were (a) the MSJ Documents and (b) the Ex Parte Motion for Entry of Judgment. On the basis of the Louisiana Court record, the undisputed facts, the uncontroverted affidavit testimony submitted by Appellee and the incompetent, unauthenticated nature of the hearsay submitted by Appellant, the Trial Court was well within its discretion to find that Mendoza was not afforded due process and, therefore, that the Louisiana Judgment against him is void.[6]

---

[6] Again, there is no federal impediment to the Trial Court's finding. The Louisiana Court specifically found that Mendoza's due process claims had not been previously litigated and could be determined by the Trial Court. (CRII 911 & 914).

**C.** **Having found that the Louisiana Judgment is void as to Mendoza, the Trial Court properly vacated the Proffered Judgment in its entirety – as to all Appellees.**

As set forth above, a trial court can take one of only two actions when faced with a challenge to a foreign judgment proffered for domestication in Texas: enforce it or vacate it as void. *See Corporate Leasing Int'l,* 896 S.W.2d at 422. It has no discretion to do anything else (*e.g.*, modify the foreign judgment). Accordingly, a trial court's determination to vacate the proffered judgment is, itself, final and appealable, which is why Appellant can appeal rather than file a mandamus proceeding. *See Mindis*, 132 S.W.3d at 483. Accordingly, the Trial Court, having found the Louisiana Judgment void as to Mendoza, properly vacated the Proffered Judgment in its entirety – as to all Appellees. *See id.*

Although the law is clear that a domesticated foreign judgment that is vacated as to one judgment defendant is vacated as to all, Garcia has argued, in the alternative, that a single judgment vacated as to one defendant, could be at best interlocutory (and equally unenforceable) as to the others. This is because the determination that the Louisiana Judgment is void as to Mendoza is, itself, entitled to full faith and credit, and, therefore, as argued by Appellant, the Louisiana Court will be required to grant Mendoza's Rule 60(b) motion for relief from the Louisiana

Judgment.[7]  Once that occurs, the Louisiana Judgment will be interlocutory as to all non-Mendoza Appellees and they will be able to seek relief prior to entry of any final judgment against them or thereafter, within appellate deadlines.  *See* FED. R. CIV. P. 54(b) (unless federal court expressly determines that there is no just reason for delay, "any order or other decision, however designated, that adjudicates . . . the rights and liabilities of fewer than all the parties does not end the action as to any of the . . . parties and may be revised at any time before the entry of a judgment").  Whether the Proffered Judgment is regarded as vacated as to all parties (which is the correct interpretation of *Mindis*) or interlocutory due to the res judicata effect of the

---

[7] In requesting that the Louisiana Court enjoin the Appellees from seeking vacatur of the Proffered Judgment from the Webb County Trial Court, Appellant argued,

> If the Webb County District Court decides that [the Louisiana Court's] judgment is void, [Appellant] will have no recourse left in [the Louisiana] Court.  The U.S. Supreme Court has explained that "[c]hallenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from [the U.S. Supreme] Court."  *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 525 (1986); *see also Raj v. Tomasetti*, No. 03-1993, 2008 WL 2718905, at *3 (E.D. La. July 11, 2008).

Motion for Prelim Injunction at 27.

Appellant is correct.  In *Raj*, a case from the Eastern District of Louisiana, the federal court had entered a consent judgment in a diversity action which the judgment creditor later sought to enforce through a Louisiana state court proceeding.  2008 WL 2718905, at *1-2.  In the state court proceeding, the judgment debtor argued that part of the consent order was unenforceable under Louisiana law.  *Id.* at *2.  The state court agreed and entered an order finding that part of the federal judgment a nullity.  *Id.*  When the judgment creditor requested that the federal court enjoin enforcement of the state court's ruling, the federal court denied the request and explained that the state trial court's judgment, which had been affirmed on appeal, "was conclusive with respect to the validity of the [provision at issue in] the consent judgment" and, as such was entitled to full faith and credit in the federal court."  *Id.* at *3.

vacatur on the Louisiana Court proceeding, the Proffered Judgment is unenforceable against any of the Appellees and the Trial Court properly granted Garcia's Motion to Vacate.

## CONCLUSION AND PRAYER

The Trial Court's orders must be upheld because they (a) were entered while the Trial Court retained its plenary power and (b) resulted from the Trial Court's proper exercise of discretion as a fact-finder.  The only competent, uncontroverted evidence before the Trial court showed that Mendoza had not been served with the MSJ Documents in accordance with federal law.  There was no competent evidence that Mendoza had acquired notice and an opportunity to respond by any other means.  Accordingly, "a reasonable trier of fact could have formed a firm belief or conviction" that Mendoza was not afforded due process prior to the entry of the $2.7 million judgment against him.  Because the Trial Court properly found the foreign judgment void as to Mendoza, it properly vacated the Proffered Judgment in its entirety -- as to all Appellees, including Garcia.

WHEREFORE, Appellee Garcia prays the Court to AFFIRM the Trial Court's orders.  Garcia prays for all other relief to which he is justly entitled.

Dated:   November 16, 2015           Respectfully submitted,

**BECKSTEAD TERRY, PLLC**

By:   /s/ Jana K. Terry
     Jana K. Terry
     State Bar No. 24003041

9442 N. Capital of Texas Hwy
Arboretum Plaza One, Suite 500
(512) 827-3574; (855) 845-3262 fax
jterry@becksteadterry.com

*Attorneys for Appellee Christopher Garcia*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to TEX. R. APP. P. 9.4, I hereby certify that this brief contains 11,063 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

/s/ Jana K. Terry
Jana K. Terry

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served in accordance with the Texas Rules of Appellate and Civil Procedure, on Counsel/the parties names below, on this the 16th day of November, 2015.

Audrey Mullert Vicknair
LAW OFFICE OF AUDREY
MULLERT VICKNAIR
802 N. Carancahua Ste. 1350
Corpus Christi, Texas 78401-0022
**Counsel for Appellant Rettig**
*Via tex.gov eService*

Carlos Evaristo Flores
PERSON,WHITWORTH,
BORCHERS &MORALES, LLP
602 E. Calton Road, 2nd Floor
P.O. Drawer 6668
Laredo, Texas 78042-6668
**Counsel for Lopez, Foreign Judgment Defendant**
*Via tex.gov eService*

C.M. Henkel III
FRITZ BYRNE HEAD &
FITZPATRICK PLLC
500 North Shoreline, Suite 901
Corpus Christi, Texas 78401
**Counsel for Appellant Rettig**
*Via tex.gov eService*

Darrell W. Cook
DARRELL W. COOK &
ASSOCIATES, P.C. One Meadows
Building
5005 Greenville Ave., Ste. 200
Dallas, Texas 75206
**Counsel for Williams, Foreign Judgment Defendant**
*Via tex.gov eService*

Lance H. Beshara
PULMAN CAPPUCCIO PULLEN
BENSON & JONES, LLP
2161 N.W. Military Hwy., Suite 400
San Antonio, Texas 78213
**Counsel for Appellee Mendoza**
*Via tex.gov eService*

Ronald E. Bruno
2304 Matador Circle
Austin, Texas 78746
*By US Mail*

/s/ Jana K. Terry
Jana K. Terry